**Rodney Joel PERRY, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–82–0651–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 22, 1984.

Connie B. Williams, Houston, for appellant.

James C. Brough, Houston, for appellee.

Before EVANS, C.J., and DOYLE and LEVY, JJ.

## OPINION

EVANS, Chief Justice.

A jury convicted the appellant of aggravated robbery, and the court assessed his punishment at five years imprisonment. We reverse the trial court's judgment, and order the cause remanded for a new trial.

During the noon hour on February 11, 1982, a man entered a Seven-Eleven convenience store and asked the store cashier, Mr. Shafiei, for change. The man told the cashier he was looking for a job, and the

cashier gave him the phone number of an office where he used to work. Their conversation lasted five to ten minutes. The man then walked behind the counter, put a knife to the cashier's side, and took the cash out of the cash register. While the robber was tying up the clerk in the back room, two women, Ms. Cauthen and Ms. King, came into the store to make a purchase. When the robber came out of the back room, he walked behind the counter and attempted to impersonate the cashier. However, the two women became suspicious when they noticed that there were no bills in the cash register and that the robber seemed unfamiliar with the operation of the store. They left the store and called the police from a lounge next door.

The police officer who responded to the call interviewed the cashier and the two women, and took four sets of fingerprints from the store, none of which matched the appellant's. The cashier and Ms. Cauthen were unable to provide the investigating officer with a detailed description of the robber, except that they agreed he was a black man with a medium, full Afro haircut, wearing reflective sunglasses. They expressed doubt that they would be able to identify him. The report of the investigating officer indicates that Ms. King provided the additional description of the robber as being 5'11", heavy-set, with a mustache and whiskers. Several months later, Ms. King identified the appellant from a photo spread, and the State brought charges against the appellant on the basis of her identification.

In three grounds of error, the appellant contends that the judgment should be reversed because: (1) the prosecution commented on his silence during its argument to the jury; (2) the trial court should have granted a mistrial when the jury announced it was hopelessly deadlocked; and (3) the evidence was insufficient to support the verdict.

During his closing argument to the jury, the prosecutor stated:

Other than the pictures that have been introduced in evidence, the State's case

consists of the testimony that was presented from three witnesses and the two police officers. I think that very quickly you can scan all the evidence, the surrounding circumstances, *and you will realize that there is no other evidence that has been brought to you.* (Emphasis added by appellant.)

 The record reflects that the defense did not call any witnesses, either to establish an alibi or to challenge the reliability of the State's evidence. Thus, the prosecutor's remark could be interpreted as pointing out the fact that the defense did not put on any direct evidence. In order for a prosecutor's argument to constitute an impermissible comment on the accused's failure to testify, "the implication that the language used had reference to such failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied allusion to the accused's failure to testify." *McDaniel v. State,* 524 S.W.2d 68 (Tex.Cr.App.1975). We further note that the defense made no objection to the argument in question. The first ground of error is overruled.

The record does not clearly reflect how long the jury had deliberated when it announced to the court that it was hopelessly deadlocked and the appellant's counsel moved for a mistrial. For the purpose of discussion, we accept the appellant's representation that the jury had deliberated for four hours at that time. The record reflects that after the trial court denied appellant's motion for mistrial and instructed the jury to proceed with its deliberations, the jury deliberated an additional one and a half hours that afternoon and approximately 25 minutes the next morning before reaching its verdict.

 The trial court may discharge a jury if it determines in its discretion that it is improbable the jury will be able to reach agreement. In this case, after the court was given a note from the jury stating "we are hung...hopeless," and the appellant moved for mistrial, the court brought the jury into the courtroom and asked how they were split. The foreman responded

"9 and 3." The court then instructed the jury to proceed with its deliberations, and appellant's counsel stated that he had no objection to the court's instruction as given.

■ We hold that the record does not show that the trial court abused its discretion in overruling appellant's motion for mistrial and in instructing the jury to proceed with its deliberations. The second ground of error is overruled.

■ In his third ground of error, appellant challenges the sufficiency of the evidence identifying him as the robber. As stated in *Phillips v. State,* 164 Tex.Cr.R. 78, 297 S.W.2d 134, 135 (1957),

It is a well-recognized principle of law in this state that, to sustain a conviction, it should appear not only that an offense as charged has been committed, but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it .... There must be legal and competent evidence pertinently identifying the defendant with the ... offense charged against him.

Three people saw the robber, and at trial, all three identified appellant as the robber. The cashier testified he could not identify the robber from the photo spread presented to him by the police, but at trial pointed out appellant as the robber, claiming the identification was made on the basis of his memory. On cross-exam, he admitted that when interviewed by the police immediately after the robbery, he had said, "I can't know who robbed me." Ms. Cauthen similarly had not been able to make a definite identification from the photo spread. At trial she said she thought she could identify the robber, and pointed out appellant. However, when the State tried to get a more definite identification, she stated appellant looked a lot like the robber, but she was not certain they were the same person.

The State's strongest evidence was the eyewitness identification by Ms. King, who was the only one of the three witnesses who identified appellant from the photo spread. Ms. King testified that while the robber was posing as the convenience store cashier, she had a conversation with him that lasted between three and five minutes.

Her identifying testimony as elicited by the State was as follows:

Q. When you came to that picture [of appellant], did Detective King do anything to suggest to you that it was the person that you should identify?

A. No, sir, I didn't.

Q. Just prior to your looking at the pictures, had he ever stated that the suspect was affiliated with the Seven-Eleven store?

A. No, sir, he didn't.

Q. Was there anything that Detective King said during this interview that would suggest to you that the suspect was among those pictures or that you should select any particular picture?

A. No, sir. He just told me to go through the pictures. That's all he said.

Q. And you were able to select a picture of the man you had seen?

A. Yes, sir.

Q. I would ask you if you see the person in the courtroom that you identified from these photographs and that you saw on February 11th, 1982?

A. Yes, sir.

[Ms. King points out appellant.]

Q. Is your identification based upon the way you remember him looking on February 11th, 1982, or is it based on what you recall from those photographs that you were shown in April?

A. No, sir, it's based on what I saw that day.

Q. That alone?

A. Yes, sir.

Q. Any question in your mind about that identification?

A. No, sir, there is not.

On cross-examination, Ms. King maintained that she recognized the appellant's face in the photo despite the fact that the robber had been wearing reflective sunglasses, and the appellant's hair was much shorter than the robber's. Defense counsel subsequently ascertained on cross-examination of the investigating officer that the offense report for the case contained a description of the robber, given by Ms. King on the day of the robbery which differed in several material respects from her testimony at trial. However, the defense did not have the report itself entered into evidence, and did not recall Ms. King to question her earlier testimony by use of the offense report. During deliberations, the jury's request for the offense report was denied because it had not been brought into evidence.

The record indicates that the charge against appellant was brought on the basis of Ms. King's initial identification of appellant's photograph. This identification occurred on May 19, 1982, approximately three months after the robbery. The appellant's photograph was placed with twelve other photographs of black males, and each of the three witnesses was asked whether he could identify the robber from the thirteen photographs. The cashier, Mr. Shafiei, could not make an identification. Ms. Cauthen indicated her belief that photos 4 and 10 resembled the robber, but she also could not make a definite identification. Ms. King picked out photo no. 4, definitely identifying the appellant as the robber.

Photographs 2, 3, 7, 8, 9, and 13 are mug shots of black males. Photographs 10, 11, and 12 are polaroid pictures of black males, wearing t-shirts, standing against a brick wall. Photographs 1, 5, and 6 are of black males wearing casual shirts, standing in front of a county map. Photograph 4 shows the appellant standing in front of a blank wall, wearing a *Seven-Eleven store jacket with an employee name tag.*

■ The identification of a suspect by an eyewitness to a crime has long been recognized as a critical point in criminal proceedings. *See, U.S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Despite efforts to constitutionally safeguard the ultimate fairness and integrity of a conviction by setting out guidelines for the identification process, there is inherent unreliability in eyewitness evidence. As stated in *Simmons v. U.S.,* 390 U.S. 377, 383, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968),

> Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals *without indicating whom they suspect,* there is some danger that the witness may make an incorrect identification.

(Emphasis added).

To determine whether an eyewitness identification at trial has been improperly tainted by a pre-trial photo spread identification, the United States Supreme Court has held that the reviewing court should use the following test:

> [E]ach case must be considered on its own facts, and ... convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so *impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.*

*Simmons v. U.S.,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (Emphasis added).

The *Simmons* test has been used by the Texas courts on several occasions: *Navajar v. State,* 496 S.W.2d 61 (Tex.Cr.App. 1973); *Jones v. State,* 458 S.W.2d 62 (Tex. Cr.App.1970); and *Daussin v. State,* 640 S.W.2d 631 (Tex.App.—Houston [14th Dist.] 1982, no writ).

■ In applying the test to the facts of a particular case, the reviewing court should first determine if there was any impermissible suggestion by the police of the identity of the suspect, and then consider

whether such improper suggestion created a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

Looking to the facts of the present case, we find the testimony of the detective who conducted the photo spread identification indicated that he did nothing to direct Ms. King's attention to the appellant's photograph. However, a review of the thirteen pictures in the photo spread immediately leads the viewer to identify the appellant as the suspect in the Seven-Eleven store robbery. State's exhibit 4 is a photograph of appellant wearing *a Seven-Eleven jacket* with an employee name tag. The suggestiveness of this photograph is amply demonstrated by the fact that the other two witnesses, Mr. Shafiei and Ms. Cauthen, spontaneously remarked that the person shown in photograph 4 was wearing a Seven-Eleven jacket, while all the other suspects wore assorted street shirts. We also note that even after being shown the picture of appellant wearing the suggestive clothing, the cashier was not aided in his identification; however, the picture did tend to confuse him. He testified "the pictures (sic) I saw had the Seven-Eleven uniform. It was for me confusing because that's not person... He showed me somebody with Seven-Eleven uniform..., but I told him this was confusing for me. He told me the other two women, they knew the picture, but I don't know that picture." Furthermore, Ms. Cauthen, who had been unable to make an identification from the photo spread pictures, stated, "the man I said that was possibly him had shorter hair, was cleaned up and all, and the jacket he was wearing threw me. I wasn't expecting him to be in that kind of jacket." The detective also recalled that the suspect in the photograph was wearing "a red smock-type shirt, Seven-Eleven shirt."

■ The photo spread identification was not conducted until some three months after the robbery, and there is no suggestion that time pressures or other exigent circumstances prevented the police from obtaining a less suggestive photograph of appellant in order to protect him from a possible mistaken identification. Since the appellant's photograph provided in itself a visual cue to the police department's principal suspect in the robbery, we conclude that the photographic identification procedure was impermissibly suggestive. *Simmons v. U.S., supra; Neil v. Bigger, supra.*

■ We next consider whether this impermissible suggestion of the suspect's identity created a substantial likelihood of a misidentification, weighing (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers, supra.*

■ Ms. King testified that she had the opportunity to observe the robber for 3 to 5 minutes, although his eyes were always obscured by reflective sunglasses. There is no indication that her attention was diverted during such period of time, but she testified that she is a housewife and she was scared when she realized the man behind the counter was a robber. Therefore her degree of attention must be considered in the light of her lack of training and the surrounding circumstances. The record shows also that her description of the robber at the scene differs in several respects from the description she gave at trial. Finally, three months had elapsed between the time of Ms. King's confrontation with the robber and her identification of appellant from the photo spread. Considering the record in its entirety, we conclude that the impermissibly suggestive photo spread did create a substantial risk of misidentification.

■ When the State's case is dependent upon eyewitness testimony, there is always the risk that an individual may be convicted of a crime he or she did not commit. Thus, it is the special role of the judiciary to protect the integrity of the

criminal justice system by requiring that the State observe basic rules of fairness during the identification process. Under our system of due process, an individual may not be punished unless the State has proven, by reliable, untainted evidence, the defendant's guilt beyond a reasonable doubt.

Defense counsel did not attempt to suppress the photo spread identification, nor did he object to the in-court identification. In very rare instances, an error in admitting evidence will be so clear and so prejudicial that it is subject to review on appeal, despite the failure of the defense to object at trial. *See, Caballero v. State*, 587 S.W.2d 741 (Tex.Cr.App.1979). There is no evidence of a conscious waiver by appellant of his right to identification by due process, and constitutional standards of this nature cannot be waived, any more than an individual could "consent" to the illegal coercion of his confession. These constitutional safeguards protect the integrity of our criminal justice system, unlike those constitutional rights that are designed to protect individual privacy and autonomy, and which can be waived. Neither can the violation be considered harmless, since the conviction was based almost entirely on the eyewitness testimony which resulted from the unconstitutional identification procedure. This appeal is brought by the same attorney who represented the appellant at trial. This attorney's failure to specifically assign error regarding the unconstitutional identification does not preclude our review of clear error in the record in the interest of justice. *Carter v. State*, 639 S.W.2d 13 (Tex.App.—Dallas 1982), aff'd 656 S.W.2d 468 (Tex.Cr.App., 1983). Although the initial eye-witness identification of appellant by the two other witnesses might constitute sufficient evidence to support the conviction, the admission of the witness's testimony based on the unconstitutional photo spread tainted her identification, and it is impossible to ascertain the degree to which the jury's verdict was influenced by her testimony. Thus, we conclude that the error requires reversal of the conviction.

We reverse the judgment and remand the cause for a new trial.