COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JORGE ARTURO PEREZ,                                 )                  No. 08-03-00424-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  70th District Court
)
THE STATE OF TEXAS,                                   )                  of Ector County, Texas
)
                                    Appellee.                          )                  (TC# A-30,100)

O P I N I O N

            Jorge Arturo Perez appeals his conviction for evading arrest. A jury found Appellant guilty
of the offense and the court assessed punishment at two years’ imprisonment probated for five years
and a $1,250 fine. We affirm.
FACTUAL SUMMARY
            On February 10, 2002, Odessa police officer Sammy Berzoza was dispatched to the corner
of Lincoln and Mable where a victim was struck by a brown van. Berzoza was traveling in a marked
patrol car and wearing his uniform. He proceeded down Crane Street to Mable. From this vantage
point, he could see all the way down to the location of the disturbance and saw people in the
roadway. He watched a brown van leave the scene, going south on Lee at a high rate of speed. At
that time, the officer was located at the intersection of Mable and South Sam Houston which runs
parallel to Lee. He turned onto Sam Houston in an effort to cut off the van. When he arrived at the
intersection of May and South Sam Houston, the van was headed in the officer’s direction. Berzoza
parked in the left-hand lane and activated his emergency lights. The driver looked right at him as
he passed, smiled, and kept driving. Berzoza viewed the driver’s face for four seconds and saw no
one in the passenger seat. 
            Since Berzoza’s in-car video camera was operating, the jury watched the pursuit on tape. 
Berzoza proceeded after the van westbound on Lee. The van took a left at 1013 or 1015 Wilson to
the backyard of a residence and the driver exited, running west at a rapid pace. No one else got out
of the van. By the time Berzoza rounded the corner, the driver was gone. Believing that the driver
was in between houses or in the backyards, Berzoza circled around to the back. He searched for half
a city block, but the driver was not found. Berzoza found no identification in the van. 
            Coming up empty, Berzoza went back to the assault scene to complete a report. As a result
of his investigation, Berzoza learned he was looking for an Hispanic male named George Perez, who
possibly went by the street name “Sharkey.” Berzoza believed that Appellant and Sharkey were the
same person. 
            Detective Randy Eggleston was assigned to both the assault and evading cases. Eggleston
compiled a photo lineup using prior arrest records and information he received from other officers. 
He had obtained information about Appellant but he was not familiar with Sharkey. As a result,
Sharkey’s picture was not included in the lineup. Nine days after the disturbance, Berzoza was asked
to view Eggleston’s photo lineup to try to identify the driver. Berzoza identified Appellant as the
driver of the van. 
            By the time of trial, Officer Berzoza knew that Appellant and Sharkey were not the same
person. As it turned out, Sharkey was Appellant’s brother. Berzoza acknowledged that if Sharkey
had been the driver, then his identification was in error, but he believed that he had been given an
incorrect nickname at the scene. Defense counsel showed Berzoza pictures of both Appellant and
Sharkey, and he expressed his opinion that the only similarity between the brothers was black hair. 
            Patrol supervisor Johnny Valderaz was on the lookout for a person by the name of “Sharkey”
in February and March 2002 in reference to the evading case filed by Officer Berzoza. Valderaz had
prior dealings with Jose Perez, Jr. and knew his street name to be Sharkey. Valderaz planned to
identify Sharkey and photograph him. Valderaz saw Sharkey at the west side Wal-Mart on March 9,
2002. Valderaz took his photograph and then contacted Berzoza. Valderaz did not know that
Berzoza had already made an identification. When Berzoza was shown the picture of Sharkey, he
told Valderaz that Sharkey was not driver. On cross-examination, Valderaz was shown Eggleston’s
lineup and asked whether any person resembled Sharkey. Valderaz answered that Appellant and
Sharkey resembled each other.
            Although no photographs were shown to any of the witnesses at the assault scene, their
statements identified James Salcido, Appellant, and Sharkey as suspects. Eggleston testified that
statements were related to the assault case and that while there was confusion as to the identity of
the driver involved in the assault, there was no confusion as to whom Berzoza had seen evading
arrest and detention.
            Appellant testified that he did not get along well with his brother and identified him as the
driver. His brother had used the name “Sharkey” for over four years. Appellant was with James
Salcido and Sharkey on the day in question when Salcido told him to stop at his house. They found
Frank “Max” Morino there. Morino had just fixed up his truck, and Appellant wanted to drive it
around the block. When Appellant arrived back at the house, the van was gone. He denied having
any part in the incident. He told the jury he had broken his ankle when he was sixteen and had
surgery where a screw was inserted. He was unable to run due to excruciating pain, although he was
able to walk fast. 
            During cross-examination, the State elicited information regarding Appellant’s prior
convictions. On February 25, 1998, Appellant pled guilty to the misdemeanor offense of evading
arrest/detention. On June 2, 2000, Appellant pled guilty to the offense of evading arrest/detention. 
Appellant maintained that he did not run away either time.
            Other witnesses testified concerning the issue of identity. Christy Valdez, Appellant’s fiancé,
testified that she was with Appellant that day but that she had no personal knowledge about who was
driving the van. She did say that Sharkey told her that Appellant could take the blame since he was
already facing charges. Rosa Gonzales testified that she saw the van and that Sharkey was the one
driving. But on cross- examination, she admitted that the information as to the identity of the driver
had come from her eleven-year-old daughter, who had cried out “here comes Junior in the van.” 
Appellant’s sister testified that she saw Sharkey running away from the van that day.
FACTUAL SUFFICIENCY OF THE EVIDENCE

            In Point of Error One, Appellant challenges the sufficiency of the evidence to support his
conviction beyond a reasonable doubt. He complains that the in-court identification was tainted by
the photo lineup since it did not include a photograph of Sharkey and since Appellant and Sharkey
resembled each other. Appellant also argues that the bulk of the evidence establishes his innocence
and that it was Sharkey who evaded detention. He also claims that the investigation focused on the 
erroneous assumption that Appellant and Sharkey were the same person. Finally, he alleges that the
enhanced videotape shows that Berzoza had limited time to view the driver and that the jury was
skeptical since it was evenly split after two votes.
Standard of Review
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). 
            The Court of Criminal Appeals clarified this factual sufficiency standard of review in Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). There is only one question to be answered in
a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally
justified in finding guilt beyond a reasonable doubt? When considered by itself, evidence supporting
the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Or there may
be both evidence supporting the verdict and evidence contrary to the verdict. Id. at 485. If the
contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been
met, the guilty verdict should not stand. Id. This standard acknowledges that evidence of guilt can
“preponderate” in favor of conviction but still be insufficient to prove the elements of the crime
beyond a reasonable doubt. Id. Stated another way, evidence supporting guilt can “outweigh” the
contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. Id. 
Preservation of Error
            On direct examination, Officer Berzoza identified Appellant as the driver with no objection
from the defense. Nor did the defense object to the admission of the photo lineup. Berzoza also
offered his out-of-court identification of Appellant without objection. 
            Texas courts stringently apply the contemporaneous objection rule in the context of improper
identification. Without an objection to an in-court identification or to testimony based on an
impermissibly suggestive identification procedure, no error is preserved. See Perry v. State, 703
S.W.2d 668, 671 (Tex.Crim.App. 1986). Accordingly, Appellant failed to preserve his complaint
of an impermissibly suggestive identification since he failed to object when the testimony was
admitted at trial. Nevertheless, we will review the factual sufficiency of the evidence based on the
testimony of the sole eyewitness.
Impermissible Identification
            The identification of a suspect by an eyewitness to a crime has long been recognized as a
critical point in criminal proceedings. See U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d
1149 (1967). Despite efforts to constitutionally safeguard the ultimate fairness and integrity of a
conviction by setting out guidelines for the identification process, there is inherent unreliability in
eyewitness evidence. Even if the police subsequently follow the most correct photographic
identification procedures and show pictures of a number of individuals without indicating whom they
suspect, there is some danger that the witness may make an incorrect identification. Simmons v.
U.S., 390 U.S. 377, 383, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). To determine whether an
eyewitness identification at trial has been improperly tainted by a pretrial photo spread, the reviewing
court considers each case on its own facts. Convictions based on eyewitness identification at trial
following a pretrial identification by photograph will be set aside only if the photographic
identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood
of irreparable misidentification. Simmons, 390 U.S. at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1247. In
applying the test to the facts of a particular case, the reviewing court should first determine whether
the police impermissibly suggested the identity of the suspect, and then consider whether the
improper suggestion created a substantial likelihood of misidentification. Neil v. Biggers, 409 U.S.
188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).
            In support of his proposition that the officer’s identification was tainted, Appellant directs
us to Loserth v. State, 931 S.W.2d 322 (Tex.App.--San Antonio 1996), vacated by, 963 S.W.2d 770
(Tex.Crim.App. 1998) and Perry v. State, 669 S.W.2d 794 (Tex.App.--Houston [1st Dist.] 1984),
rev’d by, 703 S.W.2d 668 (Tex.Crim.App. 1986). In Loserth, the victim was murdered inside her
apartment. 931 S.W.2d at 323-24. A neighbor heard her scream around 3:40 a.m. that morning but
did not know what to do. Id. at 323. When he later heard a crashing noise, he looked at the victim’s
apartment and saw a man on the balcony. Id. After the man then jumped from the third floor, the
witness called the police. Id. The principal eyewitness was unable to give much of a description,
noting only that the person was tall, thin, and wearing dark clothes like a jump suit. Id. at 325. He
was shown a single color photograph of the defendant. Id. He was not shown a traditional lineup
since the police were only trying to determine whether the defendant had been seen around the
apartment complex. Id. The witness positively identified defendant as the man he saw the night of
the murder. Id. He never wavered in his identification and he was the only witness whose testimony
placed the defendant at the scene of the crime. Id. 
            The defendant filed a motion to suppress the witness’s identification testimony. Id. at 327. 
The trial court allowed the witness to make an in-court identification but suppressed the
photographic identification. Id. In reversing, the intermediate court held that showing the
photograph to the witness was impermissible, suggestive, and resulted in a substantial likelihood of
irreparable misidentification. Id. at 330. The Court of Criminal Appeals faulted the intermediate
court’s failure to consider some of the underlying facts in a light most favorable to the trial court’s
admission of the in-court identification. Loserth, 963 S.W.2d at 774. It vacated the judgment and
remanded to the court of appeals for reconsideration. Id. 
            In Perry, a man entered a 7-11 store and asked the cashier for change. 669 S.W.2d at 796.
He also told the cashier he was looking for a job. Id. The cashier gave him the phone number of a
former employer and their conservation lasted five to ten minutes. Id. at 797. The man walked
behind the counter, held a knife to the cashier’s side, and took the cash out of the register. Id. While
the man tied up the cashier in the back room, two women--Ms. Cauthen and Ms. King--entered the
store. Id. They became suspicious and left to call the police. Id. The cashier and Ms. Cauthen were
unable to give a detailed description of the robber, agreeing only that he was a black man with a full
Afro haircut and wearing reflective sunglasses. Id. However, Ms. King described the robber as
5’11” and heavy set with a mustache and whiskers. Id. Three months later, Ms. King identified
Appellant from a photo spread. Id. The cashier could not make an identification, and Ms. Cauthen
indicated that two of the photographs resembled the robber. Id. at 799. The photograph selected by
Ms. King depicted Appellant wearing a 7-11 store jacket with an employee name tag. Id. At trial,
all three witnesses identified Appellant as the robber. Id. at 798. 
            The court of appeals found that the photo spread immediately led the viewer to identify 
Appellant as the suspect in the 7-11 store robbery since he was pictured wearing a 7-11 jacket. Id.
at 800. Since Appellant’s picture provided a visual cue to the principal suspect, the photographic
identification procedure was impermissibly suggestive and created a substantial risk of
misidentification. Id. The Court of Criminal Appeals ultimately concluded that error had been
waived. Perry, 703 S.W.2d at 673.
            After reviewing the record, we find nothing to indicate that the officer who conducted the
photo lineup directed Officer Berzoza’s attention to Appellant’s photograph. The six pictures
presented to Berzoza all depicted Hispanic males, and none of the suspects had any suggestive
features. Berzoza unequivocally identified Appellant as the driver of the van and never wavered on
his identification at trial. Berzoza was later shown a photograph of Sharkey and still insisted that
Sharkey was not the driver.
            Given all the evidence presented at trial, a rational jury could have concluded beyond a
reasonable doubt that the officer’s identification of Appellant was accurate. It is the sole province
of the jury to determine what weight to give contradictory testimonial evidence since it turns on the
evaluation of credibility and demeanor. See Cain, 958 S.W.2d at 407. A verdict is not manifestly
unjust merely because the jury resolved conflicting views of the evidence in favor of the State. Cain,
958 S.W.2d at 410. Because the evidence is not so weak as to be clearly or manifestly unjust or
contrary to the overwhelming weight of the evidence, we overrule Point of Error One. 
ADMISSION OF EXTRANEOUS OFFENSES
            In Point of Error Two, Appellant challenges the admission of extraneous offenses, claiming 
they were not of a similar nature since the offenses did not involve a motor vehicle.
Standard of Review
            The trial court’s task is to determine whether extraneous offense evidence is relevant for a
purpose other than the propensity of the defendant to commit crimes or other bad acts. Booker v.
State, 103 S.W.3d 521, 530 (Tex.App.--Fort Worth 2003, pet. ref’d)(op. on reh’g). Rulings on
relevance should be left largely to the trial court, relying on its own observations and experience, and
we will not reverse absent an abuse of discretion. Moreno v. State, 858 S.W.2d 453, 463
(Tex.Crim.App. 1993), Corley v. State, 987 S.W.2d 615, 618 (Tex.App.--Austin 1999, no pet.).
Appellate courts should give great discretion to the trial courts in matters of relevancy, reversing only
if the trial court acts outside “the zone of reasonable disagreement.” Montgomery v. State, 810
S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh’g); Couchman v. State, 3 S.W.3d 155, 158
(Tex.App.--Fort Worth 1999, pet. ref’d).
Determining Admissibility
            To be admissible, evidence must be relevant. Tex.R.Evid. 401, 402. Evidence of other
crimes, wrongs, or bad acts is not admissible to show character conformity. Tex.R.Evid. 404(b). 
However, extraneous offense evidence is relevant apart from showing character conformity if the
proponent shows that it tends to establish some elemental fact, such as identity or intent; that it tends
to establish some evidentiary fact, such as motive, opportunity or preparation, leading inferentially
to an elemental fact; or that it rebuts a defensive theory by showing, e.g. absence of mistake or
accident, or that it is relevant upon a logical inference not anticipated by the rulemakers.
Montgomery, 810 S.W.2d at 387-88; see also Taylor v. State, 920 S.W.2d 319, 321 (Tex.Crim.App.),
cert. denied, 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996). Extraneous offense evidence
might also be relevant under Rule 404(b) to prove identity by rebutting a defensive theory that
someone other than the defendant committed the offense alleged. Johnston v. State, 145 S.W.3d
215, 220 (Tex.Crim.App. 2004). Before admitting evidence of another act of misconduct to show
the identity of the assailant under this particular theory, the State must first show that the defendant
is, in fact, the person who committed the other act. Id. “To be admissible to show identity, an
extraneous offense must be so similar to the offense charged that the offenses are marked as the
accused’s handiwork.” Id., citing Lane v. State, 933 S.W.2d 504, 519 (Tex.Crim.App. 1996). For
example, when a defense witness presents a picture that the defendant is not the type of person to
commit the charged offense, the prosecution may impeach the defense witnesses’ testimony by
introduction of similar extraneous offenses. See McIlveen v. State, 559 S.W.2d 815, 822
(Tex.Crim.App. 1977); Mares v. State, 758 S.W.2d 932, 936 (Tex.App.--El Paso 1988, pet. ref’d). 
By raising a defensive theory, the defendant opens the door for the State to offer rebuttal testimony
regarding an extraneous offense if the extraneous offense has common characteristics with the
offense for which the defendant is on trial. Mendiola v. State, 995 S.W.2d 175, 178 (Tex.App.--San
Antonio 1999), rev’d on other grounds by, 21 S.W.3d 282 (Tex.Crim.App. 2000). As a general rule,
the defensive theory that the State wishes to rebut through the use of extraneous offense evidence
must be elicited on direct examination, and may not by elicited by “prompting or maneuvering” by
the State. See Shipman v. State, 604 S.W.2d 182, 185 (Tex.Crim.App. 1980); Mares, 758 S.W.2d
at 936.
The Extraneous Offenses
            On redirect, the defense had Appellant show the jury his scars on his ankles. Appellant
testified that he was unable to run since it would cause excruciating pain. The State then offered two
extraneous offenses for impeachment purposes since Appellant testified that he could not have run
from the officer because of the ankle injury. First, Appellant pled guilty and was convicted of
misdemeanor evading arrest/detention in an incident on January 19, 2000. In explaining this
incident, Appellant testified that Sharkey had “run” off while he merely “walked” away. Second,
Appellant pled guilty and was convicted of misdemeanor evading arrest/detention in an incident on
February 7, 1998. Here, Appellant claimed that although he did not flee from the officer, it was
easier if he just pled guilty.
Analysis
            Since Appellant was questioned on direct regarding his injury, the defense elicited a
defensive theory which opened the door concerning inability to run. Mendiola, 995 S.W.2d at 178;
Shipman, 604 S.W.2d at 185. The State was entitled to offer rebuttal evidence to show that in the
past--and after he was injured--Appellant had been twice convicted of fleeing from police on foot. 
McIlveen, 559 S.W.2d at 822; Mendiola, 995 S.W.2d at 178. He admitted that he committed the
extraneous offenses, which had common characteristics with the offense for which Appellant was
on trial. Mendiola, 995 S.W.2d at 178; McIlveen, 559 S.W.2d at 822. They were also relevant to
the identity issue. Finding no abuse of discretion, we overrule Point of Error Two and affirm the
judgment of the trial court.
February 17, 2005                                                       
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)