1343-15

NO._____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

ORIGINAL

---

FRANCISCO ARZATE,
(Appellant/Petitioner)

V.

THE STATE OF TEXAS,
(Appellee/Respondent)

---

APPELLANT/PETITIONER'S PRO SE

PETITION FOR DISCRETIONARY REVIEW

---

In Appeal No. 01-12-01074-CR

from the

Court of Appeals

for the First Judicial District

Houston, Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 28 2015

Abel Acosta, Clerk

---

( ORAL ARGUMENT REQUESTED )

FILED IN
COURT OF CRIMINAL APPEALS

DEC 28 2015

Abel Acosta, Clerk

Francisco Arzate
TDCJ# 1821766
3001 S. Emily Dr.
Beeville, TX 78102

i.

# TABLE OF CONTENTS

INTERESTED PARTIES. . . . . . . . . . . . . . . . . . . . . . . . iii.

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . iv.

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . 1.

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . 2.

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . 3.

GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . .4.

GROUND FOR REVIEW NUMBER ONE:Whether untested voice identificaion constitutes "eyewitness identification" which satisfies the 5th and 14th Amendment Due Process requirement of proving the element of identity beyond a reasonable doubt under the "Biggins" standard?

GROUND FOR REVIEW NUMBER TWO: Whether the 5th and 14th Amendment Due Process requirement of proving identity beyond a reasonable doubt can be satisfied by using the State's theories and interpretations deduced from the uncorroberated testimony of the State's witness' as "legally sufficient evidence" in the appellate review?

GROUND FOR REVIEW NUMBER THREE: In cases based soley on un uncorroberrated testimony, is it error for the appellate court to deem this testimony as "circumstantial evidence" by speculating on what inferences,if any, were drawn by the jury in order to satisfy the court's own standards?

ARGUMENTS ONE THROUGH THREE. . . . . . . . . . . . . . . . . . . 5-9

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . .10.

APPENDIX "A". . . . . . . . . . . . . . . . . . . . . . . . . .
(Memorandum Opinion)

## INTERESTED PARTIES

<u>TRIAL JUDGE</u>

Hon. Mary Lou Keel

232nd District Court of Harris County

<u>APPELLANT</u>

Francisco Arzate #1821766

3001 S. Emily Dr.

Beeville, TX 78102

<u>TRIAL COUNSEL</u>

Anthony Osso, Mario Madrid

440 Louisiana, Suite 1125

Houston, TX 77002

<u>APPELLATE COUNSEL</u>

J.Sidney Crowley

214 Morton St.

Richmond,TX 77469

<u>STATE OF TEXAS</u>

Devon Anderson

District Attorney, Harris County

1201 Franklin St.

Houston, TX 77002

Tina Ansari

Assistant District Attorney

Harris County, TX

Charles Brodsky

Assistant District Attorney

Harris County, TX

INDEX OF AUTHORITIES

Pg.

Aston v. State, 656 S.W.2d 453,456-58
(Tex,Crim.App.1983). . . . . . . . . . . . . . . . . 8

Barley v. State,906 S.W.2d 27
(Tex.Crim.App.1995). . . . . . . . . . . . . . . . . 7

Ex parte Amerquite,223 S.W.3d 363,364 . . . . . . . . . . . . . . . .5

Ex parte Anderson,902 S.W.2d 695,699
(Tex.App.-Austin 1998). . . . . . . . . . . . . . . 9

In re Winship,397 U.S.358,377, 25 L.Ed.2d 368,
90 S.Ct.1068 . . . . . . . . . . . . . . . . . . . . 8

Jackson v. Virginia,443 U.S.307, 99 S.Ct.2781
(1979) . . . . . . . . . . . . . . . . . . . . . . . 8

Moreno v. State,755 S.W.2d 866,867
(Tex.Crim.App.1988). . . . . . . . . . . . . . . . . 8

Neil v. Biggins, 409 U.S.188. . . . . . . . . . . . . . . 4

Page v. State,125 S.W.3d 640. . . . . . . . . . . . . . .6

Paulson v. State,991 S.W.2d 907,911
(Tex.App.-Houston[14th Dist.] 1999]. . . . . . . . . 8

Perry v. State,669 S.W.2d 794. . . . . . . . . . . . . . 5

People v. Caruso,68 Cal.2d 183,Cal.Rptr.336,340, 436 P.2d 336,340
(1968). . . . . . . . . . . . . . . . . . . . . . . 7

Simmons v. U.S.,390 U.S.377, 88 S.Ct.967
(1968). . . . . . . . . . . . . . . . . . . . . . . 6,7

State v. Cotton, 318 N.C.663, 351 S.E.2d 277
(1987). . . . . . . . . . . . . . . . . . . . . . . 5

State v. Youngblood, 153 Ariz.50, 734 P.2d 592
(Ariz.Ct.App.1986). . . . . . . . . . . . . . . . . 5

Salinas v. State,163 S.W.3d 734,737
(Tex.Crim.App.2005). . . . . . . . . . . . . . . . . 8

United v. Wade,388 U.S.218,228-29,S.Ct.1967. . . . . . . 5

Wesbrook v. State,29 S.W.3d 103,111
(Tex.Crim.App.2005). . . . . . . . . . . . . . . . . 8

- - - - - - - - - - - - - - - - - - - - - - - - - - -

Statutes & Constitutions

U.S.C.A. Const.Amends 5 and 14 . . . . . . . . . . . . . 5

Texas Penal Code §2.01. . . . . . . . . . . . . . . . . 8

Texas Code of Criminal Procedure art.38.03. . . . . . . 8

Texas Government Code § 311.011(a). . . . . . . . . . . 8

NO._____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

FRANCISCO ARZATE,
                    (Appellant/Petitioner)

v.

THE STATE OF TEXAS,
                    (Appellee/Respondent)

---

APPELLANT'S PRO SE PETITION FOR DISCRETIONARY REVIEW

---

TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

Appellant/Petitioner respectfully submits this Petition for Discretionary Review and moves that this Honorable Court grant review of this cause and offers the following in support thereof:

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant/Petitioner requests oral argument in this case because such argument may assist the Court in applying facts to the issues raised. It is suggested that oral argument may help simplify and clarify the facts and issues which may not be presented clearly in written form since Appellant/Petitioner is not a lawyer or paralegal and has no training in written form communication.

1.

## STATEMENT OF THE CASE

This is a capital murder case with a mandatory life sentence based on the finding of guilt by the jury. Arzate was represented by court appointed counsel at trial and on appeal. On Appeal the appellate counsel raised a single point of error that identity by voice recognition alone was insufficient legally and factually to support the verdict of guilt for Capital Murder. This case is distinguished by tha fact that the "evidence" used to support the verdict consisted entirely of the State's theories and interpretations of untested and uncorroberated testimony. Petitioner is not a lawyer or paralegal and advances these claims pro se.

## STATEMENT OF PROCEDURAL HISTORY

Arzate was convicted of Capital Murder in the 232nd District Court, Harris County, Honorable Mary Lou Keel presiding. Timely appeal was taken to the First Court of Appeals, Houston. On December 17,2012 the case was affirmed in an unpublished opinion. Justices Radack, Bland and Huddle as panel. No Motion for Re-hearing was filed.

Appellate attorney was found to be ineffective in habeas writ# 1317247-A. The Court of Criminal Appeals granted an out-of-time Petition for Discretionary Review. The attorney submitted a Petition for Discretionary Review without proper authorization. This led to a motion to withdraw the Petition by Petitioner which was granted along with an extension of time to file a pro se Petition for Discretionary Review. This Petition is filed within the time alloted by the Court's extension.

## GROUNDS FOR REVIEW

### I.

Whether untested voice identification constitutes "eyewitness identification" which satisfies the 5th and 14th Amendment Due Process requirement of proving the element of identity beyond a reasonable doubt under the "Biggins" standard? see Neil v. Biggins, 409 U.S.188)

### II.

Whether the 5th and 14th Amendment Due Process requirement of proving identity beyond a reasonable doubt can be satisfied by using the State's theories and interpretations deduced from the uncorroberated testimony of the State's witness as "legally sufficiant evidence" in the appellate review?

### III.

In cases based solely on uncorroberated testimony, is it error for the appellate court to deem this testimony as "circumstantial evidence" by speculating on what inferences, if any, were drawn by the jury in order to satisfy the court's own standards?

(Grounds one through three are argued together for the Court's convenience and to establish the relevancy of each claim as a whole.)

<u>GROUNDS 1-3</u>

When the State's case is dependant on eye-witness testimony, there is always the rise that an individual may be convicted of a crime he or she did not commit, thus, it is a special rule of the Judiciary to protect the integrity of the Criminal Justice System by requiring that the State observe basic rules of fairness during the identification process." <u>Perry v. State</u>,669, S.W.2d 794.

"It is well settled that the Federal as well as Texas Courts have discerned that eye-witness testimony is inherently unreliable. The vagaries of eye-witness identification are well known; the annals of Criminal Law are rife with instances of mistaken ident-ification. <u>United XXXXXX v. Wade</u>, 388 U.S.218,228-29,87 S.Ct.1967.

"eye-witness testimony is implicated in a large percentage of wrongful convictions, see <u>Bernal v. People</u>,44 P.3d 184,190(Colo. 2002)(citing a study that concluded that "mistaken eye-witness identification is responsible for more of these wrongful convictions than all others combined.); <u>State v. Cotton</u>,318 N.C.663, 351 S.E. 2d 277(1987)(wrongful conviction based on eye-witness testimony); <u>State v. Youngblood</u>,153 Ariz. 50,734 P.2d 592(Ariz.Ct.App.1986) same. "The fact that it happens to be eye-witness identification evidence lends support to the argument that eye-witness identifi-cation evidence is among the least reliable form of evidence and yet persuasive to juries." see <u>Ex parte Amezquite</u>,223 S.W.3d 363, 364.

5.

Suggestiveness of pretrial identification procedure may be created by manner in which identification procedure is conducted, such as police pointing out suspect or "suggesting" that the suspect is included in a line-up or photo array, it may be created by the content of the line-up or photo array itself." see Page v. State,125 S.W.3d 640. (see appendix B taking note of the last paragraph of the written reprt along with the photo lineup.)

The police used suggestive tactics in establishing the identity testimony. The testimony of Maria was tainted by the unlawful photo array. While Arzate may well have been considered a suspect at the time. The suggestive tactics of the police were used to convert a question of possible suspects into an identification of a perpetrator. The statement made by Maria was in spanish and the investigator did not speak spanish.

"Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of the subsequent courtroom identification." see Simmons v. United States,390 U.S.377, 88 S.Ct.967 (1968).

Clearly the identification process has beentainted by the conduct of the investigator on the night of the incident in question. It is difficult to determine whether the voice identification is fact or fiction. the victim's memory? or, the police department's embellishement.

"In determining whether a very substantial liklihood for irreparable misidentification has been created by pretrial identification procedure, Court of Appeals weighs corrupting effect of the suggestiveness against five non-exclusive factors.:

(1) Any discrepency between pre-lineup description and defendant's actual appearance (2) whether witness identified another individual prior to allegedly illegal lineup; (3) prio identification of accused by witness or failure to identify accused prior to suggestive line up(4) witnesses ability to observe criminal act (5) and amount of time between crime and illegal lineup." Barley v.State, 906 S.W.2d 27 (Tex.Crim.App.1995) (U.S.C.A.Const.Amend.14).

"We do more than recognize that unfairly constituted lineups have in the past, too often brought about the conviction of the innocent. People v. Caruso, 68 Cal.2d 183, Cal.Rptr.336,340, 436, P.2d 336,340 (1968). In the present case pretrial confrontations were so arranged as to make the resulting identification virtually inevitable. This severely corrupted the integrity of the testimony regarding voice identification which was not corroberated through any other identification process such as fingerprints or connection to the cell phone found at the scene. No other identification was attempted nor was the voice identification "tested" through a line up as used in "sight" eyewitness credibility.

The suggestive and/or unsupported testing of the voice credibility employed by the State denied the Applicant a fair trial and also a fair review on appeal. The voice identification carried great weight in persuasion of the jury, whereas the jury was unaware of how unreliable a "eyewitness" testimony can be when tainted by the state prior to trial.

The Court held that it will decide on a case by case basis whether suggestive identification gives rise to a substantial liklihood of a misidentification. Simmons v. U.S, 88 SCt.967(1968).

7.

The role of a reviewing court is that of a due process safeguard, ensuring only the rationality of the trier of facts finding essential elements of the offense charged beyond a reasonable doubt." see Moreno v. State, 755 S.W.2d 866,867(Tex.Crim.App.1988). In a legal sufficiency review the appellate court reviews all the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.307, 99 S.Ct.2781(1979); Salinas v. State,163 S.W.3d 734,737(Tex.Crim.App.2005); Wesbrook v. State,29 S.W.3d 103, 111 (Tex.Crim,APP.2005).

Despite its early use in AMerican Jurisprudence the phrase "reasonable doubt" appears neither in our Federal nor state constitutions. Paulson v. State,991 S.W.2d 907,911(Tex.App.-Houston [14th Dist.] 1999); In re Winship, 397 U.S.358,377, 25 L.Ed.2d 368, 90 S.Ct.1068. We know, of course, that the Due Process Clause of the Fourteenth Amendment to the United STates Constitution protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. Winship,397 at 364.

Article 2.01 of the Texas Penal Code provides: All persons are presumed innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The identical language is found in the Code of Criminal Procedure under Article 38.03. Despite different language in the past, these statutes and there forerunners have been substantially the same. see Aston v. State,656 S.W.2d 453m456-58 (Tex.Crim.App. 1983). Neither section 2.01 nor article 38.03 define "reasonable

8-

doubt" for the purpose of the staute or for either code nor did their statutory forerunners do so. In the absence of special definitions, statutory language can be measured by common understanding and practices or construed in the sense generally understood . see Ex part Anderson, 902 S.W.2d 695,699(Tex.App.-Austin 1995). Statutory words are to be read in context and construed according to the rules of grammer and common usage. see Tex.Gov't Code Ann. §311.011(a).

Petitoiner would show that the Court of Appeals erred in it's holding that the state proved identity "beyond a reasonable doubt." Reasonable doubt by common usage would be having a question of proof that is "reasonable". While it may be reasonable to assume that Arzate could be identified through voice recognition. The law requires the level of proof to exceed a "reasonable doubt. The jury verdict based on untested voice identification and evidecne that remains uncorroberated is legally insuffcient to support a capital murder conviciton.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitoiner prays this Honorable Court will GRANT this Petition for Discretionary Review and set this case for submission and briefs in support. And further prays this Court will find that the evidence is legally insufficient to support a capital murder conviction and reverse the judgement and enter in its plae an AQUITTAL.

Respectfully submitted,

Francisco Arzate

9.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Petition has been mailed U.S.postage prepaid through the prison mailing system to The Harris County District Attorneys Office at 1201 Franklin St. Houston, TX 77002 and Lis C. McMinn, State Prosecuting Attorney at P.O. Box 13046,Austin, TX 78711-3046

Francisco Arzate

APPENDIX "A"

Memorandum Opinion

Opinion issued December 17, 2013.



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01074-CR

———————————

**FRANCISCO ARZATE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1317247**

---

## MEMORANDUM OPINION

Francisco Arzate appeals a judgment convicting him of capital murder for

the shooting of his father-in-law, Guillermo Valdez. *See* TEX. PEN. CODE ANN.

§ 19.03(a)(2) (West Supp. 2013). A jury found Arzate guilty, and the trial judge

sentenced him to life in prison. In his sole issue on appeal, Arzate contends that the evidence is legally insufficient to support his conviction. We affirm.

## Background

Arzate was married to Maria and Guillermo Valdez's daughter, Patricia, for almost ten years, but he and Patricia had separated two years before the incident. Patricia and Arzate had five children. Patricia testified that she and Arzate had an unstable relationship and often fought and that she moved to her parents' home upon her separation from Arzate. In August 2011, Arzate was upset because he had recently learned that Patricia was in a relationship with another man. Arzate had called Patricia upset about her boyfriend and threatened that he would take action if Patricia did not end that relationship.

Patricia testified that on the day of the incident, August, 19, 2011, she talked to Arzate about paying school tuition, but they did not fight, and it was a "normal day." Arzate left a voicemail on Patricia's phone around 11:30 p.m. that night saying that "he was suffering so [Patricia was] going to suffer the same way that he was suffering." Patricia was at the hospital with her oldest son that night, but she called her sister because the voicemail worried her. A few minutes later, Maria called Patricia and told her that Arzate had shot Maria and Guillermo.

Although Patricia was not at her parents' home at the time of the shooting, several others were. Maria testified that she and Guillermo were in their bedroom

2

watching television with the door closed late at night when Maria heard a noise. Guillermo opened the bedroom door, Maria heard Arzate say "he was going to kill us," and Arzate began shooting at Maria and Guillermo. Maria testified that she had heard Arzate's voice on many occasions and immediately recognized it. Maria also testified that she saw the side of the shooter's body and it looked like Arzate. On the night of the shooting, Maria told police that she saw only the shooter's shadow, and not the shooter's face.

Guillermo and Maria's other daughter, Elizabeth, was also at the scene. She had fallen asleep in one of the bedrooms a little after midnight, but she woke up when she heard Arzate screaming in Spanish from the living room several times, "where's the bastard?" Elizabeth then heard gunshots and Maria screaming, so she ran to the living room and saw that the front door, which had been closed and locked, was open and appeared to have been forced open. She saw that Guillermo was lying on his back—shot more than once—and Maria was bleeding. When Elizabeth saw Maria, Maria was screaming, "why Francisco, why?" and Elizabeth believed that Maria was referring to Arzate. Elizabeth did not see the shooter, but she testified that there was no doubt in her mind that the voice she heard yelling "where is the bastard?" was the voice of Arzate.

Elizabeth's thirteen year old son, Heron, was also home and sleeping on the living room couch when the shooting took place. Heron testified that he also heard

3

Arzate yelling, "where was the bastard at?" Heron did not see Arzate on the night of the shooting, but recognized his voice because he had often visited Arzate's house. Heron also testified that he heard Maria say, "why Francisco, why?"

By the time police and EMS arrived, Guillermo was dead from four gunshot wounds. Arzate called Patricia after the incident, but she did not answer.

The day after the shooting, Arzate called his employer, Richard Gonzalez, and told him "that he wasn't going to be coming in because he had an issue, something happened with his family and he doesn't know if he's ever going to come back." Gonzalez testified that during the same phone call, Arzate also said, "what happened happened."

The police suspected Arzate was the shooter and that he had fled to Mexico shortly after the shooting. Arzate's brother and sister testified that Arzate went to Mexico but added that the trip was a planned vacation to visit family. Patricia testified that this was Arzate's first trip to Mexico and that he would not have vacationed there because he did not have documentation that would allow him to re-enter the United States.

A few months after the shooting, Arzate sent Patricia a text message that said, "I'm sorry. Are you guys okay. Are my kids okay." Patricia testified that Arzate also called her from Mexico. In one such call, Arzate, who had said he was angry that Patricia was not taking his calls, threatened Patricia by saying that "The

4

same thing that he did to [her] dad he was going to do it to [her] grandma, that he knew where she lived and he was going to go over there and get her also."

Patricia also testified that Arzate attempted to have her create an alibi for him. In a letter, Arzate wrote: "do it for our children and for the love we had between us. You know it wasn't my fault about your father. Why do you want to take your children's father away." The letter continued: "If you feel something in your heart you tell the lawyer that I was in Mexico."

Arzate also called Gonzalez and threatened that Gonzalez would suffer the same fate as Guillermo. When Arzate left for Mexico, Arzate had left his car and tools with Gonzalez. Gonzalez testified that Arzate told him that if Gonzalez did not pay Arzate's brother for the vehicle and his tools, that he "was going to kill me and come after my family." Gonzalez testified that Arzate added, "If you don't believe me you saw what happened to my in-laws."

## Discussion

In his sole point of error, Arzate contends that the evidence is legally insufficient to support his conviction. Specifically, Arzate argues that a rational jury could not have found him guilty based solely upon voice identification, which he argues is less reliable than eyewitness identification.

5

## A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *McGregor v. State*, 394 S.W.3d 90, 109 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979)); *see also Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding *Jackson* standard is only standard to use when determining sufficiency of evidence). Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *McGregor*, 394 S.W.3d at 110 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Id.* (citing *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008)). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *Id.* (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Id.* (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). We afford almost complete deference to the jury's determinations of credibility and we resolve any inconsistencies in the evidence in

favor of the verdict. *Id.* (citing *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

## B. Applicable Law

A person commits capital murder when he commits murder under section 19.02(b)(1) of the Penal Code and "commits the murder in the course of committing or attempting to commit . . . burglary." TEX. PEN. CODE ANN. § 19.03(a)(2). A person commits the offense of burglary if, "without the effective consent of the owner," the person "enters a building or habitation and commits or attempts to commit a felony, theft, or assault." TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). Under section 19.02(b)(1), a person commits murder if he intentionally or knowingly causes the death of another person or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. TEX. PENAL CODE § 19.02(b)(1), (2) (West 2011); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013).

A murder conviction may be based on circumstantial evidence. *Temple*, 390 S.W.3d at 359 (citing *Clayton*, 235 S.W.3d at 778). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In circumstantial evidence cases, it is not necessary that every fact and circumstance point directly

7

and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Id.* (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

## C. Analysis

To prove that Arzate is guilty of capital murder, the State had to prove beyond a reasonable doubt that Arzate, in the course of a burglary or attempted burglary, knowingly or intentionally caused Guillermo's death or intended to cause Guillermo serious bodily injury and committed an act clearly dangerous to human life that caused Guillermo's death. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1); 19.03(a)(2).

We conclude the evidence supports the jury's guilty verdict. First, three witnesses who had known Arzate for years identified Arzate as the shooter based on his voice. Maria testified that she heard Arzate say "he was going to kill us" and then the shooter began shooting at her and Guillermo. Elizabeth testified that it was Arzate who screamed "where's the bastard" right before she heard gunshots. Heron also testified that it was Arzate who yelled those words. Voice identification is an acceptable means of identification and has been held sufficient to support a conviction. *See Locke v. State*, 453 S.W.2d 484, 485 (Tex. Crim. App. 1970) ("Voice is a competent means of identification if the witness had any previous

8

acquaintance with the person identified"); *Davis v. State*, 180 S.W.3d 277, 285–86 (Tex. App.—Texarkana 2005, no pet.) (holding voice identification sufficient to support conviction).

Second, Arzate's conduct after the murder indicates consciousness of guilt. There is evidence that Arzate was in Mexico after the shooting, despite the fact that he had not previously traveled to Mexico because his immigration status made it impossible for him to return. Gonzalez testified that Arzate told him the day after the murder "something happened with his family and he doesn't know if he's ever going to come back."

Finally, there is evidence that Arzate implicitly admitted shooting Guillermo, explicitly asked Patricia to create an alibi for him, and threatened both Patricia and Gonzalez that their relatives would meet the same fate as Guillermo if his demands were not met. Patricia testified that Arzate sent her a letter asking Patricia to lie about his whereabouts on the night of the shooting. Patricia also testified that a few months after Guillermo's murder, Arzate sent her a text message stating that he was "sorry" and that Arzate also called her from Mexico and threatened to do the "same thing" to her grandma that he did to Guillermo. Gonzalez testified that Arzate called him several times after the murder and during one call threatened to kill Gonzalez and go after his family if Gonzalez did not pay Arzate's brother. Gonzalez testified that Arzate substantiated the threat by saying,

9

"if you don't believe me you saw what happened to my in-laws. What do you think is going to happen to you[?]" And, in a voicemail Arzate left Patricia on the night of the shooting, he warned that he was going to make her suffer like she was making him suffer.

Arzate contends that the State's failure to present an eyewitness identifying Arzate or physical evidence—such as fingerprints, DNA, or ballistic evidence—linking Arzate with the shooting renders the evidence insufficient. But, the lack of physical evidence, such as fingerprints, footprints, or DNA, does not render the evidence supporting a conviction insufficient. *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Similarly, eyewitness identification is not required for a conviction. *Green v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (eyewitness identification is not necessary to identify perpetrator). The lack of eyewitness testimony and physical evidence were factors for the jury to consider in weighing the evidence, and we defer to the jury's resolution of these issues. *See McGregor*, 394 S.W.3d at 110.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that during the course of committing a burglary, Arzate intentionally or knowingly caused Guillermo's death or intended to cause his death and committed an act clearly dangerous to human life that caused his death. Accordingly, we hold the evidence was legally sufficient to

support the judgment. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) ("Evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn."); *McInturf v. State*, 544 S.W.2d 417, 419 (Tex. Crim App. 1976) (holding voice identification is direct evidence, which may constitute sufficient basis for conviction, and testimony about voice identification is question of fact for jury); *Kesaria v. State*, 148 S.W.3d 634, 640–41 (Tex. App.—Houston [14th Dist.] 2004) (holding evidence was sufficient to establish defendant's identity to support burglary of habitation conviction where victims unequivocally identified defendant as man who burglarized home in part because they recognized his voice), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006).

We overrule Arzate's sole point of error.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

11