Rudolph MENDIOLA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00813–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 24, 1999.

Rehearing Overruled April 13, 1999.

Mark Stevens, San Antonio, for Appellant.

Mary Beth Welsh, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before TOM RICKHOFF, Justice, SARAH DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### FACTUAL BACKGROUND

Rudolph Mendiola was charged with three counts of aggravated sexual assault of a child and three counts of indecency with a child by sexual contact. H.A., a three and one-half year-old girl at the time of offenses, was the complainant in each count. A jury convicted Mendiola of three counts of indecency with a child by sexual contact and sentenced him to twelve years' imprisonment. Mendiola appeals his conviction in four points of error.

### DISCUSSION

In his first point of error, Mendiola contends the trial court erred by admitting evidence of an extraneous offense during the guilt-innocence trial phase because the evidence did not rebut any defensive theory presented, nor did it rebut defense testimony. Mendiola contends the evidence should have been excluded because it

proved nothing more than character conformity, in violation of Tex.R. Evid.404(b).

The admission of evidence is a matter within the discretion of the trial court. *See Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim.App.1990)(opinion on reh'g). Accordingly, the trial court's admission of evidence is reviewed under an abuse of discretion standard. *See id.* at 379–80. As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Rachal v. State,* 917 S.W.2d 799, 807 (Tex. Crim.App.1996); *Montgomery,* 810 S.W.2d at 391.

■ To prevent an accused from being prosecuted for some collateral crime or misconduct, the State may not introduce evidence of extraneous offenses similar to the offense charged. *Montgomery,* 810 S.W.2d at 387. However, as an exception to the general rule of exclusion, evidence of "other crimes, wrongs, or acts" may be admissible if it has relevance to a material issue other than to show that the accused acted in conformity with some trait of character and the probative value of the evidence is not "substantially outweighed by the danger of unfair prejudice...." *Montgomery,* 810 S.W.2d at 387; Tex.R. Evid. 403, 404(b). If the opponent of extraneous offense evidence objects on the grounds that the evidence is not relevant to a material issue, violates Rule 404(b), or constitutes an otherwise inadmissable extraneous offense, the proponent must satisfy the trial court that the extraneous offense evidence has relevance apart from its character conformity value. *Montgomery,* 810 S.W.2d at 387. If the trial court determines the evidence has no relevance apart from supporting the conclusion that the defendant acted in conformity with his character, it is absolutely inadmissible. *Id.* Extraneous offense evidence is relevant apart from showing character conformity if the proponent shows that it:

> tends to establish some elemental fact, such as identity or intent; that it tends

to establish some evidentiary fact, such as motive, opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g. absence of mistake or accident .... [or] that

it is relevant upon a logical inference not anticipated by the rulemakers. *Montgomery,* 810 S.W.2d at 387–388; *see also Taylor v. State,* 920 S.W.2d 319, 321 (Tex. Crim.App.1996).

■ Therefore, extraneous offense evidence may be relevant and admissible to rebut a defensive theory. *See Ransom v. State,* 920 S.W.2d 288, 300 (Tex.Crim. App.1994). "Rebuttal of a defense means evidence is introduced contradicting some aspect of the defense itself...." *Celeste v. State,* 805 S.W.2d 579, 581 (Tex.App.— Tyler 1991, no writ)(quoting *Boutwell v. State,* 719 S.W.2d 164, 180 (Tex.Crim.App. 1985)). When a defense witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach the defense witnesses' testimony by introduction of similar extraneous offenses. *See McIlveen v. State,* 559 S.W.2d 815, 822 (Tex.Crim. App.1977); *Mares v. State,* 758 S.W.2d 932, 936 (Tex.App.—El Paso 1988, pet. ref'd). By raising a defensive theory, the defendant opens the door for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has common characteristics with the offense for which the defendant was on trial. *See Bell v. State,* 620 S.W.2d 116, 126 (Tex.Crim.App.1980). As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination, and may not by elicited by "prompting or maneuvering" by the State. *See Shipman v. State,* 604 S.W.2d 182, 185 (Tex.Crim.App.1980); *Mares,* 758 S.W.2d at 936. However, as an exception to this general rule, when a defendant voluntarily or nonresponsively testifies concerning extraneous matters on cross examination, the State may correct any false impression

presented by such answer. *See Martinez v. State*, 728 S.W.2d 360, 361–62 (Tex. Crim.App.1987); *Mills v. State*, 847 S.W.2d 453, 456 (Tex.App.—Eastland 1993, pet. ref'd); *Burrow v. State*, 668 S.W.2d 441, 443 (Tex.App.—El Paso 1984, no pet.).

A defendant raises a defensive theory in the context of charged sexual offenses by presenting evidence of physical incapability or denial of propensity to commit such acts. *See Wilson v. State*, 730 S.W.2d 438, 440–41 (Tex.App.—Fort Worth 1987, pet. ref'd)(extraneous sex offenses admissible to show that Wilson's medical condition did not prevent him from having sexual relations with children); *Ballard v. State*, 464 S.W.2d 861, 862–63 (Tex.Crim.App.1971) (extraneous sex offenses admissible to rebut defendant's assertion that he did not "mess around with little children").

Mendiola's wife, Esperanza (Hope) Mendiola, testified in his defense. On direct examination, Hope testified she babysat H.A. and her two brothers at the Mendiola's home in 1994. Hope testified that she and Mendiola stopped having sexual relations after his prostate surgery in 1985. Hope testified that Mendiola did not seek medical assistance to enable him to have sexual relations after the operation. Hope testified that Mendiola was incapable of making his penis erect from February of 1994 to July 1994 to enable them to have sexual relations. Hope also testified that Mendiola had eye surgery in March 1994, which prevented him from bending over and required him to have bed rest. In response to Hope's testimony on direct examination, the State asked several related questions on cross examination. During cross examination, Hope testified that Mendiola was incapable of committing the offenses charged because of his medical problems originating in 1985, which permanently prevented him from having sexual relations. When asked to explain why she believed his medical problems rendered him physically incapable of committing the offenses charged, Hope responded that Mendiola could not have committed the crimes because she was always present in the house and because he was a good, respectable man who would not molest a child.

Dr. Antuno Centeno, a urologist, testified that he performed prostate surgery on Mendiola in February 1985, when Mendiola was 72 years old. Dr. Centeno testified that he saw Mendiola again in September 1985, when Mendiola complained of decreased sexual potency and inability to maintain an erection. Dr. Centeno testified that he attributed Mendiola's complaints to the effects of Mendiola's recent surgery and his age. Dr. Centeno testified about the decrease in a man's testosterone level as he ages and the effects of these changes on his ability to achieve and maintain an erection. Dr. Centeno testified that, with the decrease in testosterone levels, a male's sexual drive and desire to have sexual relations also decrease. Dr. Centeno testified that due to the changes in levels of testosterone that occur as a man ages, it would have been difficult for Mendiola, at the age of 81, to have sexual intercourse with an adult, and it would have been more difficult for him to have sexual intercourse with a child.

Dr. Allen Baribou, an Ophthalmologist, testified that he performed eye surgery on Mendiola on March 1, 1994. Dr. Baribou testified about the limitations placed on Mendiola's activities after the surgery and that bending over or picking up objects would have been painful.

The trial court allowed the State to admit evidence of an extraneous offense for the purpose of rebutting Mendiola's defensive theory that he was incapable of performing the charged sex acts due to his health condition and age and that he was incapable of forming the desire to perform such acts for the same reasons. The State introduced evidence of another similar unadjudicated act of sexual indecency with a child that occurred after Mendiola's prostate surgery and before the crimes charged in this case.

The first issue that must be addressed is whether the defense witnesses' direct testimony opened the door to allow the admission of extraneous offense evidence and whether the State could rely on Hope's cross examination testimony to present such evidence. Hope and Dr. Centeno's direct testimony presented a general impression that Mendiola was physically incapable of performing the crimes charged due to his age and his medical condition. Dr. Centeno presented the defensive theory that due to his age, Mendiola would not have had the sexual desire to perform the acts charged. The testimony presented a defensive theory of physical incapability to perform the acts charged and incapability to form the requisite intent to allow the use of rebuttal extraneous offense evidence. On cross examination, without prompting from the State, Hope stated that Mendiola was not the type of person to commit the acts charged. Because this statement was not responsive to the question asked, the State could properly rely on this statement to present rebuttal evidence dispelling this impression.

J.P., the Mendiola's neighbor, testified that on September 29, 1991, when she was seven or eight years old, Mendiola "got me over to this big chair and he took off my shorts and my underwear. And he began touching my vagina and licking me, and he tried to stick his penis in my vagina. But I pulled out of the chair so he couldn't." J.P. testified that she felt Mendiola's penis next to her vagina, although he was not successful in penetrating her. The State closed its case at the conclusion of J.P.'s testimony.

In her testimony, J.P. described an unadjudicated extraneous offense performed by Mendiola that was similar to the acts for which he was on trial. *See Bell*, 620 S.W.2d at 126. J.P.'s testimony rebutted Mendiola's defensive theory that after his prostate surgery in 1985, he did not have the physical capability or desire to perform the sex acts for which he was charged or the physical capability to form

the requisite intent. The evidence revealed that in 1991, Mendiola had the capability to form the specific intent to arouse and gratify sexual desire and had the physical capabilities to perform sexual acts similar to those for which he was on trial. The evidence also rebuts Hope's testimony that Mendiola could not have committed the charged acts because he "was a good, respectable man who would not molest a child." The evidence impeached Mendiola's defense witnesses' testimony and dispelled a defensive theory and, therefore, was relevant and admissible.

Mendiola attempts to misdirect the focus of this analysis by arguing that he never contested the element of intent to arouse or gratify sexual desire because he did not raise the defense that he accidently, inadvertently, or incidentally touched H.A.. Mendiola describes his defense theory to be strictly that he did not touch H.A. at all, and argues that the extraneous offense evidence did not rebut this theory. Mendiola mischaracterizes his defensive theory and the impressions presented. Hope testified that Mendiola did not have the capability for sexual relations after his surgery. Dr. Centeno testified regarding decreased sexual drive and desire to have sexual relations in men Mendiola's age and regarding Mendiola's self-professed decreased sexual potency after his surgery. This evidence raised the defensive theory that Mendiola was *incapable* of forming the element of intent to arouse or gratify sexual desire due to his medical problems, not merely that Mendiola did not touch H.A. at all. The extraneous offense evidence was relevant to show Mendiola did have the capability to form the requisite intent to perform the sexual acts for which he was charged. Mendiola also contends that the evidence was inadmissible because the intent to commit the charged offenses could be inferred from acts themselves. However, Mendiola's presentation of a defensive theory that he was incapable

of forming the required intent for the crime charged dispels this argument.

■ Mendiola's argument that the evidence was inadmissible because he did not contest the issue of intent also fails because the requirement that the relevant material issue be contested is " 'no more than a rule of thumb for insuring that an extraneous act is genuinely needed to shore up the State's case.' " *Wilson*, 730 S.W.2d at 440 (quoting *Morgan v. State*, 692 S.W.2d 877, 879 (Tex.Crim.App.1985)). Therefore, such consideration pertains to the second prong of the analysis, which is pursued after it is determined that the evidence is relevant: whether the probative value of the evidence outweighs the prejudice. *Wilson*, 730 S.W.2d at 440.

Next, Mendiola contends the extraneous offense evidence was inadmissible to rebut the defensive theory that he was physically incapable of committing the acts for which he was charged. Mendiola again mischaracterizes the defensive theory presented at trial and the ultimate purpose of the extraneous offense evidence. Mendiola argues that he presented the defensive theory that he "could not have assaulted [H.A.] because he was physically incapable of achieving and maintaining an erection." Because the extraneous offense evidence did not pertain to his ability to engage in sexual intercourse, Mendiola contends it was insufficient to rebut this theory. This argument might have some merit if Mendiola were only charged with aggravated sexual assault. However, Mendiola was also charged with sexual indecency with a child, which does not require sexual intercourse or penetration.[1] The extraneous offense did pertain to Mendiola's physical ability to commit sexual indecency, which requires only exposure of genitals or sexual contact with a child. Because the evidence was relevant to prove Mendiola's physical capability to perform this offense,

it was admissible to rebut Mendiola's general defensive theory of physical incapability.

Mendiola's first point of error is overruled.

In his second point of error, Mendiola contends the trial court erred by admitting evidence of an extraneous offense because the probative value of the evidence was substantially outweighed by its prejudicial effect, in violation of Tex.R. Evid. 403. Mendiola contends the extraneous offense evidence was inadmissible under Tex.R. Evid. 403 because any probative value was substantially outweighed by its prejudicial value. Mendiola contends the state had no compelling need to admit the evidence to prove any relevant issues in the case, again, because he did not contest the element of intent, nor did it serve to rebut the defensive evidence concerning his physical capabilities. Mendiola contends the marginal probativeness of the evidence and countering prejudice favored exclusion.

■ Even if admissible, the trial court retains discretion to exclude extraneous offense evidence under rule 403 if the opponent makes an objection based upon Rule 403 and the trial court determines the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 810 S.W.2d at 388. If the trial court admits evidence of "other crimes, wrongs or acts," it should instruct the jury, upon proper request, that the evidence is admitted for a limited purpose. *Id.* If the opponent makes the Rule 403 objection, the trial judge must weigh the probativeness of the evidence to see if it is substantially outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. *Id.* In keeping with the pre-

---

1. A person commits the act of indecency with a child (1) by engaging in sexual contact with the child, or (2) by exposing his anus or any part of his genitals, knowing the child is pres-

ent, with intent to arouse or gratify the sexual desire of any person. Tex. Penal code Ann. § 21.11(a) (Vernon 1994).

sumption of admissibility of relevant evidence, there is a presumption that relevant evidence is more probative than prejudicial. *Id.* at 389; *Santellan v. State*, 939 S.W.2d 155, 168–69 (Tex.Crim.App.1997). The court must also consider the State's need for the evidence in the presentation of the contested issues. *Montgomery*, 810 S.W.2d at 388, 395. The State's need for evidence is measured according to three factors: 1) whether other evidence is available to establish the fact of consequence that the extraneous misconduct is relevant to show and, if so; 2) the strength of the other evidence and; 3) whether the fact of consequence is related to a contested issue. *Id.* at 390.

■ As discussed in the analysis of the first point of error, Mendiola did contest the element of intent by advancing the defensive theory that he was incapable of forming the requisite intent, and the evidence served to rebut the defensive theory that he was physically capable of committing the acts charged. For these reasons, Mendiola's arguments fail. The State did have a compelling need to present the evidence to rebut the defensive theories advanced by Mendiola. The evidence did not present danger of unfair prejudice by presenting cumulative evidence, confusing the issues, misleading the jury, or causing undue delay. Accordingly, the trial court did not abuse its discretion by admitting the evidence. Mendiola's second point of error is overruled.

In his third point of error, Mendiola argues the trial court committed reversible error by failing to give a requested limiting instruction to the jury at the time the extraneous offense evidence was admitted. *Mendiola argues this error requires this court to reverse and remand for a new trial.*

Mendiola requested a limiting instruction regarding the extraneous evidence prior to J.P.'s testimony. However, the trial court denied the request, waiting until its instruction of the jury at the close of the evidence.

■ Under Tex.R. Evid. 105(a), when evidence is admissible for one purpose only, but not for another purpose, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." While Rule 105(a) does not specifically impose a requirement regarding when the trial court's jury instruction must be made, the Court of Criminal Appeals has recently held that "logic demands that the instruction be given at the first opportunity." The court held, under the same facts, when a party requests a limiting instruction at the time evidence of extraneous offenses is admitted, the trial court must instruct the jury at that time, and cannot wait until the jury charge at the close of the evidence. *See Rankin v. State*, 974 S.W.2d 707, 711–713 (Tex.Crim. App.1996). The failure of the trial court to give a simultaneous instruction is subject to harmless error analysis under Tex. R.App. P. 44.2 (previously Tex.R.App. P. 81(b)(2)). *Jones v. State*, 944 S.W.2d 642, 653–54 (Tex.Crim.App.1996).

While *Jones* mandated that the failure of the trial court to give a simultaneous instruction is subject to harmless error analysis, Tex.R.App. P. 81(b)(2) controlled at that time. Under Rule 81(b)(2), when error occurred in the trial court, the appellate court was required to reverse the judgment unless it determined "beyond a reasonable doubt that the error made no contribution to the conviction or punishment." However, when Rule 81(b)(2) was amended into Rule 44.2, analysis of constitutional errors were separated from analysis of all other errors. Under Rule 44.2(a), if the trial court commits constitutional error that is subject to harmless error review, the court of appeals must reverse the conviction unless it "determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex.R.App. P. 44.2(a). Under Rule 44.2(b), any other errors that do not "affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). Therefore, the

issue is undecided whether the error of failing to give a simultaneous instruction at the time of admission of extraneous offense evidence was constitutional error subject to Rule 44.2(a) analysis.

■ The right to a limiting instruction simultaneous with the admission of extraneous offense evidence is not granted in either our state or federal constitutions. Consequently, such right is purely a creation of the legislature through TEX.R. EVID. 105(a) and judicial interpretation of that rule. *See Jones,* 944 S.W.2d at 653–54; *Rankin,* 974 S.W.2d at 711–713. Therefore, the erroneous denial of a simultaneous limiting instruction does not constitute the denial of a constitutional right. However, this court's inquiry does not end with this determination. Under Rule 44.2(b) error affecting a "substantial right" is not synonymous with error affecting a constitutional right. *Ford v. State,* 977 S.W.2d 824, 826 (Tex.App.—Fort Worth 1998, no pet. h.). Accordingly, our next inquiry must be whether the error affected a substantial right.

The Court of Criminal Appeals has recently interpreted "substantial right" as a right "affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 270–71 (Tex.Crim. App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex.App.—Fort Worth 1998, pet. ref'd).

■ In this case, the trial court's failure to give a limiting instruction on the admission of extraneous offense evidence did not affect Mendiola's substantial rights. The evidence was admitted as rebuttal to Mendiola's defense theory and, therefore, was admitted after both parties rested. Because the evidence was admitted through the last witness, at the close of the guilt/innocence phase of trial, no other evidence was placed before the jury before the trial court gave its jury charge. The jury charge included the correct limiting instruction regarding the extraneous offense evidence. The State reiterated the proper purpose of the extraneous offense evidence in its closing argument. On these facts, the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See King,* 953 S.W.2d at 270–71.

Because the error did not affect Mendiola's substantial rights, it was harmless. Mendiola's third point of error is overruled.

In his fourth point of error, Mendiola argues that the trial court erred by failing to admit evidence that a criminal indictment for an additional extraneous offense, admitted by the prosecution during the punishment phase of trial, was dismissed prior to its prosecution. Mendiola contends this evidence was relevant and admissible because it disproved a fact of consequence, it was evidence of his prior criminal record, and it satisfied the rule of optional completeness.

During the punishment phase of trial, the State admitted additional extraneous offense evidence through the testimony of Alma Mota for the purpose of punishment enhancement. Mendiola, through the testimony of Mendiola's daughter, Elizabeth Castillo, attempted to prove that the State dismissed criminal charges for the alleged offenses against Alma Mota. The State's objections to Mendiola's admission of this evidence were sustained.

In the punishment phase of trial, the State or the defendant may admit "evidence as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant...." TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(Vernon 1998). The State is entitled to admit evidence of unadjudicated extraneous offenses at punishment, provided it proves beyond a reasonable doubt that the defendant committed the offense for which he could be criminally responsible, regardless of whether he was charged or finally convicted. *Id.* The ad-

mission of evidence is reviewed under an abuse of discretion standard. *See Montgomery*, 810 S.W.2d at 379–80.

■■■■ Relevant evidence is any evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." TEX.R. EVID. 401. Evidence which provides a "small nudge toward proving or disproving some fact of consequence" is relevant, regardless whether the evidence actually proves or disproves a particular fact. *Montgomery*, 810 S.W.2d at 376. In deciding whether evidence is relevant, a trial court should inquire whether a reasonable person would believe that the evidence is "helpful in determining the truth or falsity of any fact that is of consequence to the lawsuit." *Id.*

■■■ Any evidence of dismissal of criminal charges for extraneous offenses committed against Alma Mota was irrelevant to prove the truth or falsity of the acts. Because TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a) allows the State to admit evidence of unadjudicated extraneous offenses only if it can prove beyond a reasonable doubt that the act actually occurred, article 37.07 § 3(a) inherently provides protection against admission of irrelevant extraneous offense evidence. Under Article 37.07 § 3(a), the issue whether the extraneous offense was unadjudicated or whether the defendant was finally convicted is not pertinent to the determination whether the evidence is admissible. Therefore, it can be surmised that any evidence indicating that charges for the extraneous offense were dismissed is irrelevant to prove the truth or falsity of the act.

Because the evidence was not necessarily helpful to a reasonable person in determining, beyond a reasonable doubt, that the extraneous offense was actually committed, the trial court's failure to admit evidence that the extraneous offense was unadjudicated was not an abuse of discre-

tion. Mendiola's fourth point of error is overruled.

The judgment of conviction is affirmed.

Concurring opinion by TOM RICKHOFF, Justice.

TOM RICKHOFF, Justice, concurring.

I admit to a persistent prejudice against the arcane judicial dance required of trial courts when they balance probative and prejudicial value in cases involving deviant behavior, including sexual abuse of the young. The basic problem is an illogical conflict between rules of evidence 403 and 404(b) on the one hand, and certain deviant human behavior on the other. We have become slaves of this ancient rule, in spite of evidence that it conflicts with all we have learned of human nature in the last two hundred years. The net result is that no evidentiary question has been more frequently litigated or is more difficult to resolve.

"This policy of the Anglo–American law is more or less due to the inborn sporting instinct of Anglo–Normandom—the instinct of giving the game fair play even at the expense of efficiency of procedure." 1 JOHN HENRY WIGMORE, EVIDENCE § 57 (Chadbourn rev.1940). This ancient concept of excluding character-conformity evidence was further advanced by the English judiciary's "merciful impulse to mitigate the cruelty of the bloody criminal code by throwing obstacles in the way of its operation." *Id.* (quoting *Darling v. Westmoreland*, 52 N.H. 401, 406 (1872)).

So the English developed this rule so that simple human characteristics like quarrelsomeness did not lead to convictions for assault. Naturally this rule is antagonistic to the rule which prevails in many other countries, like France, where the fact-finder has "the benefit of the light to be derived from a record of the whole past life of the accused, his tendencies, his nature, his associates, his practices ... all of the facts which go to make up the life of

a human being." *Id.* (quoting *People v. Shea*, 147 N.Y. 78, 41 N.E. 505 (1895)).

In our age, however, medical science has identified many deviant behaviors that demonstrate that character conformity is as relevant as direct evidence (e.g., Munchausen's syndrome by proxy). Once a chronic deviant behavior is established, evidence of conformity is relevant indeed, and is often the most relevant evidence available.

My argument is not with this opinion; rather, it is with the rules excluding evidence of character in chronic deviant behavior cases, and with the legal reasoning exhibited in one of the most-quoted cases in this area. To me sexual abuse of young children, for example, is not "some collateral crime or misconduct" that we must shield from the fact finder. Instead, it is consistent behavior, not "other crimes, wrongs or acts." TEX.R.APP. P. 404(b). There should be no search for relevance in some other elemental fact, such as identity or intent. *See Creekmore v. State*, 860 S.W.2d 880, 885 (Tex.App.—San Antonio 1993, pet. ref'd) (arguing that character is always at issue when one is charged with sexually abusing children in one's care).

Apparently the Texas Legislature's frustration threshold has been surpassed by this illogical rule. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.1999)(permitting evidence of other crimes, wrongs or acts by defendant against a victim under 17). This exception is far too narrow. Instead, as other commentators have proposed, Rule 404 "should be deemed irrelevant to situations in which the behavior in issue is thought to be a function of a medical condition rather than a reflection of character commonly understood to involve generalized traits such as honesty." 1 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 404.6.3 fn. 55.5 (2d Ed.1993 & Supp.1998). *See also* David P. Bryder and Roger C. Park, *'Other Crimes' Evidence in Sex Offense cases*, 78 MINN. L.REV. 529 (1994).

I recognize that in this record there exists no expert evidence that a pedophile's past deviant behavior predicts future behavior. However, it is enough to read Judge Clinton's euphemistic version of Montgomery's aberrant behavior to know how far from common sense and how lost in judicial technicalities our law has become. *See Montgomery v. State*, 810 S.W.2d 372, 392–393 & fn. 5 (Tex.Crim. App.1990)(op'n on reh'g). In this new age of medical and scientific learning, I believe this hoary maxim of Anglo–Norman jurisprudence is overdue for an overhaul.