In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00248-CR
______________________________


MARIO CANO, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 380th Judicial District Court
Collin County, Texas
Trial Court No. 380-82068-04


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â A jury found Mario Cano guilty of sexually assaulting


 J.D.,


 who was seven years of age at
the time of the assault. The jury assessed Cano's punishment at twenty-five years' imprisonment. 
Cano now appeals, contending the evidence is legally and factually insufficient to support his
conviction because J.D. never specifically identified Cano in open court as being the perpetrator of
the crime. We affirm.



(1) Procedural History
Â Â Â Â Â Â Â Â Â Â Â Â The background of this case is procedurally more complex than the above synopsis might
otherwise suggest. The indictment in this case is but one of six the grand jury originally returned
against Cano, and each of those indictments concerned a different complainant. Additionally, each
of the six indictmentsâwith the exception of the indictment in this caseâcontained multiple counts. 
And, to then further complicate matters, the State elected to consolidate all six cases into a single
jury trial. See Tex. Pen. Code Ann. Â§ 3.02 (Vernon 2003). After both sides had presented their
respective cases, but before submitting them to the jury, the trial court granted Cano's motions for
directed verdicts in two of the cases. The jury subsequently found Cano guilty in the remaining cases
of all counts, with the single exception of the third of three counts in a companion appeal. In all, the
State secured nine different convictions against Cano. With this procedural background in mind, we
turn to the issues Cano presents in this appeal. 
(2) Evidentiary Sufficiency
Â Â Â Â Â Â Â Â Â Â Â Â Cano contends the evidence is legally and factually insufficient to support his conviction
because neither J.D. (the complainant in this case) nor any of the complainants in Cano's companion
cases ever identified Cano in open court as the person who had sexually assaulted them. In
reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In our review of the evidence for factual sufficiency, we view all the evidence
in a neutral light and determine whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough
that the beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146
S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim.
App. 2004)). 
Â Â Â Â Â Â Â Â Â Â Â Â J.D. was nine years old by the time Cano's cases went to trial. J.D. testified that, when she
was seven years old, a man named "Mario" had climbed on top of her and used his "private part" to
touch her female sexual organ when the two were in the bedroom of Paulina Dominguez (a relative
of J.D.). J.D. also testified she witnessed this same "Mario" sexually assault other children.


 Many
times during her testimony, J.D. had to use two anatomically correct dolls to explain what she meant
by her "private part" and his "private part." Yet her testimony concerning the assaultive conduct was,
ultimately, quite clear and specific. Nevertheless, the State never asked J.D. to identify her assailant
in open court. Similarly, the complainants in Cano's other cases provided specific testimony
regarding their victimization, but none were asked to identify Cano in open court as being the same
"Mario" about whom they had testified as having perpetrated the crimes. Thus, there would seem
to be an apparent evidentiary disconnect between the evidence of abuse (which was provided through
the complainants' various testimony) and the identification of Cano as being the person who
committed these crimes.
Â Â Â Â Â Â Â Â Â Â Â Â The complainants' testimony did not, however, constitute the entirety of the State's evidence. 
Dominguez also testified. She identified Cano in open court as being the same "Mario" who had
lived with the family, as being the person who cared for J.D. and the other children when the other
adults went to work, as being the person who celebrated holidays and other special occasions with
J.D. and her extended family, and as being the same person about whom J.D. and the other
complainants had made outcries of sexual abuse. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Identity of the person committing a crime may be proven by circumstantial evidence. Earls
v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). No formalized procedure is required to prove
the identity of the accused. Proof by circumstantial evidence is not subject to a more rigorous
standard than proof by direct evidence. Roberson v. State, 16 S.W.3d 156, 167 (Tex. App.âAustin
2000, pet. ref'd); see Couchman v. State, 3 S.W.3d 155, 162â63 (Tex. App.âFort Worth 1999, pet.
ref'd) (proof that a person named "Tony" improperly touched complainant found to be sufficient
evidence when combined with testimony of grandmother of complainant who testified defendant was
called "Tony" and identified defendant as the "Tony" she was referring to).
Â Â Â Â Â Â Â Â Â Â Â Â Given Dominguez' additional and specific testimony, we believe the jury had before it legally
sufficient evidence to link J.D.'s allegations of sexual assault to Cano. On appeal, he tangentially
suggests that someone else who had lived in the house might have committed these acts. But there
is no evidence in the record to link anyone other than Cano to J.D.'s outcries of abuse. The State's
outcry witness specifically identified Cano as being the person about whom the children had
complained, and Cano did not bring forth any evidence in the court below that there were others who
had lived in that house who could be linked to J.D.'s allegation of sexual assault. Thus, we cannot
say that this complete absence of contrary evidence is sufficient to outweigh all the evidence
supporting the jury's verdict. And, after a thorough review of the record, we also cannot say there
is anything about the jury's verdict that "shocks the conscience" or otherwise appears to be manifestly
unjust. Accordingly, we overrule Cano's first and second points of error. 
Â Â Â Â Â Â Â Â Â Â Â Â Finding the evidence both legally and factually sufficient to support the identification of Cano
as the same "Mario" identified by the complainant as being her assailant, we affirm the trial court's
judgment.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â July 28, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â August 22, 2006

Do Not Publish




fensive theory
and was contextual evidence in light of appellant's defensive strategy." Yet, the State has failed to
direct our attention to anything in the record that shows the extraneous offense occurred
simultaneously with the molestation of L.P. Such proof would be required to except the now-at-issue extraneous offense evidence from a limiting instruction under the "same transaction contextual
offense" exception of the Rankin requirement. See, e.g., Castaldo v. State, 78 S.W.3d 345, 352 (Tex.
Crim. App. 2002); Wesbrook v. State, 29 S.W.3d 103, 114-15 (Tex. Crim. App. 2000); King v. State,
189 S.W.3d 347, 356-57 (Tex. App.--Fort Worth 2006, no pet.). 

 The State's argument on this issue is more appropriate to the consideration of whether such
evidence is admissible over a Rule 404(b) objection; the State's argument does nothing to address
the proper scope of consideration a jury may have of such evidence. This is a critical distinction
because sometimes evidence, although admissible under our Rules of Evidence for certain reasons,
can have meanings beyond those proper purposes. When such a situation arises, the trial court
may--and should--immediately define and limit the jury's ability to consider such evidence to only
those areas which are permitted under our Rules of Evidence. Tex. R. Evid. 105; Rankin, 974
S.W.2d at 711-13; see also Delgado v. State, No. PD-0203-07, 2007 Tex. Crim. App. LEXIS 1235,
at *14 (Tex. Crim. App. Sept. 26, 2007) (noting that federal courts will require suaÂ sponte limiting
instructions when evidence in question is so obviously admissible only for limited purpose and to
fail to so instruct will clearly threaten serious prejudice to the accused).

 We conclude the lower court in this case erred when it denied Pedersen's request for the
limiting instruction. Cf. Rankin, 974 S.W.2d at 713. The more difficult question, however, is
whether the error resulted in sufficient harm to warrant reversal. Id.; Mendiola v. State, 995 S.W.2d
175, 183 (Tex. App.--San Antonio 1999), rev'd on other grounds, 21 S.W.3d 282 (Tex. Crim. App.
2000). 

 Except for constitutional errors, an appellate court may not reverse a criminal case unless that
error affects the accused's substantial rights. Tex. R. App. P. 44.2. A substantial right is a right that
is "affected when the error had a substantial and injurious effect or influence in determining the jury's
verdict." King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An appellate court should
ultimately affirm the conviction, despite such an error, "if the appellate court, after examining the
record as a whole, has a fair assurance that the error did not influence the jury, or had but slight
effect." Rankin v. State, 995 S.W.2d 210, 215 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd)
(citing Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

 There were only two witnesses who testified about the merits of the crime for which Pedersen
was then on trial: L.P. (the victim) and Dearinger (the outcry witness). (2) The remaining witnesses
who testified during the guilt/innocence phase were there to testify as either character or extraneous
offense witnesses. (3)

 The extraneous offense evidence concerning M.L. was admitted during the testimony of the
State's first trial witness. Until this point, the jury had heard less testimony than fit into twenty pages
of the record. After the trial court overruled Pedersen's objection to admission of any testimony
concerning the M.L. offense, the jury heard Susan Dearinger testify that Pedersen had admitted in
a court of law to having committed those extraneous sex crimes and to having been placed on
community supervision for those crimes. Dearinger also told the jury that as a result of Pedersen's
plea in the other case, he would have to register as a sex offender for the rest of his life. 
Additionally, Dearinger made a few attempts to suggestively compare L.P.'s current outcry of abuse
to that made by Pedersen's acknowledged victim in the extraneous case. 

 After L.P. concluded her testimony, the jury heard from six additional witnesses, whose
testimonies comprised about ninety additional pages of the reporter's record. From the time it heard
Susan Dearinger describe the M.L. molestation outcry until the trial court issued its written charge
(six witnesses later), the jury had unfettered discretion or direction as to how it should consider the
extraneous offense evidence and how all the other witnesses' testimonies should be evaluated in light
of the extraneous offense evidence. Moreover, one of those additional witnesses was M.L. herself;
she testified about being fondled by Pedersen on her breast and vaginal areas. 

 By our estimation, nearly thirty-five percent of the pages in the entire reporter's record of
testimony during guilt/innocence touched upon the extraneous offense evidence rather than merely
the crime for which Pedersen was then on trial. (4) The jury's unlimited ability to consider the
extraneous offense evidence clearly permeated this trial. A casual observer might go so far as to say
this trial was as much about the extraneous offense as it was the charged offenses.

 The Texas Court of Criminal Appeals has noted: 

 An instruction given for the first time during the jury charge necessarily leaves a
window of time in which the jury can contemplate the evidence in an inappropriate
manner. For example, as in this case, if the State offered evidence to show that a
defendant accused of child molestation had previously molested two other young
girls, then that evidence may properly be considered to show intent to molest the
complainant. However, jurors may also improperly use that evidence to form a
negative opinion of the defendant prior to receiving limiting instructions from the
judge. Jurors cannot be expected to know exactly how to use the evidence unless we
tell them, nor can we guarantee that they will "remain open-minded until the
presentation of all the evidence and instructions . . ." See Morrison v. State, 845
S.W.2d 882, 887 (Tex. Crim. App. 1992). Additionally, we cannot tell how jurors
have used the admitted evidence. Thus, the possibility exists that, unless we instruct
the jury on evidence concurrently with its admittance, jurors may, unbeknownst to
us, use that evidence improperly by forming an indelible perception of the defendant
that will work unfairly to his inevitable detriment.


Rankin, 974 S.W.2d at 712.

 Based on our review of the entire record of the guilt/innocence phase of trial, when taking
into account the fact that this extraneous offense evidence was admitted at the very earliest stages
of the trial on guilt/innocence, when considering the substantial portion of the record devoted to
questioning the witnesses about this extraneous offense, and when factoring in the length of time the
jury had unfettered discretion to compare this extraneous offense evidence to L.P.'s accusations of
molestation before receiving the trial court's written jury charge, we cannot say with fair assurance
that the trial court's error did not influence the jury's verdict or had but slight effect in this trial. We
must, therefore, conclude the trial court's error injured Pedersen's substantial rights. 

 The Texas Rules of Appellate Procedure mandate that we reverse the trial court's judgment
of conviction and remand this case for a new trial. Cf. Roberts v. State, 29 S.W.3d 596, 601-02
(Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) (extraneous offense evidence had "substantial and
injurious influence" on jury's verdict); and contrast Salazar v. State, 222 S.W.3d 10, 17 (Tex.
App.--Amarillo 2006, pet. ref'd) (only ten percent of trial devoted to extraneous offense evidence,
which all came during State's final three witnesses); Jones v. State, 119 S.W.3d 412, 424-25 (Tex.
App.--Fort Worth 2003, no pet.) (extraneous offense evidence admitted near end of trial, short time
interval between admission of extraneous offense testimony and promulgation of trial court's written
charge that included limiting instruction).

III. Pedersen's Remaining Points of Error

 Pedersen raises several additional points of error. Assuming, without so deciding, that he
could prevail upon any of these other issues, none would entitle him to greater relief than can be
accorded in this case given our disposition of his third issue. We, therefore, decline to address
Pedersen's remaining issues.

 We reverse the judgment of the trial court and remand this case to the trial court for a new
trial.


 Bailey C. Moseley

 Justice


Date Submitted: September 26, 2007

Date Decided: October 24, 2007


Publish



1. The trial on the merits occurred October 26 and 27, 2006.
2. See Tex. Code Crim. Proc. Ann. art. 38.072, § 2 (Vernon 2005) (permitting only first
person to whom child made outcry to testify about allegation of molestation).
3. Pedersen argued that neither M.L.'s testimony nor Paul Dearinger's testimony regarding L.P.
was admissible for any purpose. See Tex. R. Evid. 404(b) (extraneous offense evidence
inadmissible to prove accused acted in conformity therewith); Tex. Code Crim. Proc. Ann. art.
38.072 (Vernon 2005) (admission of outcry witness testimony permissible only for offense then
being tried).
4. More specifically, the extraneous offense was discussed in the jury's presence at pages
42-47, 48-50, 68-69, 70, 73-74, 77-80, 82-83, 104, 105-107, 130-141, and 142-147, for a total
of forty-two pages of testimony. The total testimony heard by the jury covered 121 pages of the
record. Thus, approximately 34.71 percent of the pages in the record concerned evidence about the
extraneous offense.