In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00228-CR


______________________________




JERRY LEE PEDERSEN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 20711




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 A jury found Jerry Lee Pedersen (Pedersen) guilty of two counts of indecency with a child
and assessed his punishment at twenty years' imprisonment for both counts. See Tex. Penal Code
Ann. § 21.11 (Vernon 2003). The complainant in each case was Pedersen's younger daughter, L.P. 
Pedersen now appeals, raising nine points of error. 

I. The Trial Court Did Not Err By Not Requiring the State To Make an Election

 In his fifth and sixth points of error, Pedersen contends the trial court erred by failing to
require the State to make an election among the various criminal incidents suggested by the evidence
as the basis for submitting the charges to the jury. He further asserts the evidence is legally
insufficient to support the jury's verdicts of guilt. 

 A. The Election

 Upon timely request by a defendant, the State must "formally differentiate the specific
evidence upon which it will rely as proof of the charged offense from evidence of other offenses or
misconduct it offers only in an evidentiary capacity." Phillips v. State, 193 S.W.3d 904, 910 (Tex.
Crim. App. 2006). 

 This allows the trial judge to distinguish the evidence which the State is relying on
to prove the particular act charged in the indictment from the evidence that the State
has introduced for other relevant purposes. Thus, the trial court can instruct the jury
on the proper use and weight to accord each type of evidence. Moreover, the election
requirement protects fundamental rights such as notice and unanimity, insuring both
that the defendant is aware of precisely which act he must defend himself against,
and that the jurors know precisely which act they must all agree he is guilty of in
order to convict him.


Id. (footnotes omitted).

 In this case, Pedersen did not ask the State to make such an election. Therefore, Pedersen
did not preserve for appellate review the issue of whether the trial court erred by not directing the
State to make an election in this case.

 B. Legal Sufficiency

 In assessing the legal sufficiency of the evidence to support a criminal conviction, we must
consider all the evidence adduced at trial in the light most favorable to the jury's verdict and
determine whether, based on that evidence and reasonable inferences therefrom, a rational juror
could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v.
Virginia, 443 U.S. 307, 318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App.
2006). We must give deference to "the responsibility of the trier of fact fairly to resolve conflicts
in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate
facts." See Jackson, 443 U.S. at 318-19. In reviewing sufficiency, we should also look at "events
occurring before, during and after the commission of the offense, and may rely on actions of the
defendant which show an understanding and common design to do the prohibited act." Cordova v.
State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Each fact need not point directly and
independently to the guilt of the appellant, as long as the cumulative force of all the incriminating
circumstances is sufficient to support the conviction. Barnes v. State, 876 S.W.2d 316, 321 (Tex.
Crim. App. 1994); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Circumstantial
evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial
evidence alone can be sufficient to establish guilt. Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim.
App. 2004). On appeal, the same standard of review is used for both circumstantial and direct
evidence cases. Id.; Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). 

 A person commits the offense of indecency with a child if the person "engages in sexual
contact with the child . . . ." Tex. Penal Code Ann. § 21.11(a)(1). The term "sexual contact" is
statutorily defined as the "touching by a person, including touching through clothing, of the anus,
breast, or any part of the genitals of a child" with the intent "to arouse or gratify the sexual desire of
any person . . . ." Tex. Penal Code Ann. § 21.11(c). The statute of limitations for this crime runs
until the tenth anniversary of the victim's eighteenth birthday. Tex. Code Crim. Proc. Ann.
art. 12.01(5)(B) (Vernon Supp. 2006).

 The State's indictment charged Pedersen with two separate counts of indecency with a child. 
The first count of the indictment alleged Pedersen "intentionally or knowingly, with the intent to
arouse or gratify the sexual desire of said defendant, engage[d] in sexual contact by touching the
breast of [L.P.], a child younger than 17 years and not the spouse of the defendant." The second
count of the indictment alleged Pedersen "intentionally or knowingly, with the intent to arouse or
gratify the sexual desire of said defendant, engage[d] in sexual contact by causing his penis to touch
[L.P.], a child younger than 17 years and not the spouse of the defendant." 

 The evidence, when viewed in the light most favorable to the jury's verdict, showed the
following: L.P. had just turned seventeen years old one month prior to the trial in this case. (1) L.P.
testified that in the spring of 2002, when she was about twelve years old, she had gone to visit
Pedersen during a period when he had custody of her pursuant to a divorce decree. At night before
bedtime, Pedersen would typically rock L.P. to sleep in a rocking chair before later carrying her to
her bed. L.P. wore a T-shirt and shorts to sleep in. On at least one occasion (possibly more) during
this spring 2002 visit, Pedersen came into the bedroom where L.P. was, laid down behind her in the
bed, draped his arm across her body, placed his hand on top of her T-shirt, and rubbed her breast
area.

 L.P. testified that on other occasions, Pedersen reached underneath her shorts to rub the area
underneath her underwear. Then, according to L.P., "He [Pedersen] would hump me." L.P.
explained that by using the term "humping," she meant that Pedersen would move his hip area back
and forth against her buttocks. During this "humping," she could feel Pedersen's erect penis as it
rubbed against her through the various layers of clothing that otherwise separated the two. 

 These events occurred at Pedersen's house in Paris, Lamar County, Texas. L.P. testified that
these contacts by Pedersen were not merely accidental, "It was more than that." 

 Pedersen now argues that this evidence is legally insufficient because L.P. did not testify
about a specific, discrete date on which each of the assaults allegedly occurred. Pedersen cites
Chafin v. State, 95 S.W.3d 549, 557-60 (Tex. App.--Austin 2002, no pet.), for the proposition that
the State's failure to connect each alleged crime with a specific date constitutes legally insufficient
proof to support a conviction. 

 In Chafin, the Austin court of appeals reversed a four-count indecency conviction originating
from Hays County. Id. at 560. The State's indictment charged Chafin with touching the juvenile
victim's breast with the intent of gratifying Chafin's sexual desire. Id. at 558. The evidence at trial
did show Chafin had touched the victim's breast at some point in time prior to the return of the
indictment and within the applicable statute of limitations; however, all the evidence showed that
the breast touching incidents occurred outside Hays County. There was no testimony that Chafin
specifically touched the victim's breast while located inside the territorial jurisdiction of Hays
County. Id. at 558-60. Without such evidence, the appellate court concluded the evidence was
legally insufficient to prove the allegations contained in the indictment. Id. at 560.

 The jurisdictional problems in Chafin are not present in the current appeal. L.P. testified the
alleged conduct occurred at her father's house, which was located in Lamar County. She testified
it occurred during the spring of 2002. Such testimony would satisfy the requirement that the alleged
offense occur within the applicable statute of limitations and before the returning of the grand jury's
March 24, 2005, indictment. See Tex. Code Crim. Proc. Ann. art. 12.01(5)(B) (limitations),
art. 21.02, § 6 (Vernon 1989) (alleged crime must be before return of indictment). There was no
testimony regarding extraneous offenses that occurred in other counties. Thus, the confusion
presented in Chafin (regarding the assignment of specific conduct to specific dates and/or specific
locations) is not present in this case. Viewed in the light most favorable to the jury's verdict, L.P.'s
testimony provides evidence establishing the essential elements of indecency. See Tex. Penal Code
Ann. § 21.11. The evidence is, therefore, legally sufficient to support the jury's verdict.

 We overrule Pedersen's fifth and sixth points of error.

II. Did the Trial Court Err By Refusing To Issue a Limiting Instruction (Issue 3)?

 In his third point of error, Pedersen contends the trial court erred by denying his request for
an oral limiting instruction to the jury, which would have served to narrow the parameters under
which the jury would properly be permitted to consider evidence concerning an extraneous offense
committed by Pedersen. The testimony at issue came from Susan Dearinger, who was the State's
first witness during the guilt/innocence phase of trial; she told the jury that Pedersen had previously
pled guilty to, and been placed on community supervision for, the crime of molesting his older
daughter, M.L. The State now contends the trial court was not required to give a limiting instruction
regarding this evidence. Both parties agree the trial court denied Pedersen's timely request for the
oral limiting instruction. 

 It is helpful to examine the portion of the trial wherein this request for a limiting instruction
arose. At its first mention, Pedersen objected to the injection of the matter of Pedersen's extraneous
offense of having sexually molested his older daughter. At that point, the jury was removed,
Pedersen questioned Dearinger on voir dire, and after the gist of Dearinger's testimony was
developed, the following exchange between Pedersen's attorney (Rodgers) and the trial court
followed:

 THE COURT: All right. The court rules that this is admissible, that these
incidents were -- appear to the court to be proven beyond a reasonable doubt. 
Anything else? 

 

 MR. RODGERS: Your Honor, I've got some case law that I have made
copies for the court to read. I'm not arguing with the judge's decision on that, but we
are entitled to know the basis that the extraneous offense is being admitted. We have
got a case that is directly on point, the same situation, siblings, daughters. We argued
it ourselves to the Court of Criminal Appeals. We are entitled to know the basis
under 404 (b).

 

 THE COURT: The basis is that a child molester in one case will be a child
molester in another case. Your client has a history of molestation and you opened the
door and that's why I'm letting it in. No other reason. He was protected if that door
hadn't been opened, but you opened it.

 

 MR. RODGERS: The basis is that it goes to show propensity to commit the
crime?

 

 THE COURT: That's part of it.

 

 MR. RODGERS: And that's exactly what the Code of Criminal Procedure
said that 404 (b) is not admissible for.

 

 THE COURT: Then they need to take another look at the issue. But that
opinion, if it is as you represent it, needs to be reviewed.


 During this same exchange, Pedersen then requested (and was granted) a running objection
to any evidence of extraneous offenses. After having received the running objection, Pedersen
requested a limiting instruction be provided to the jury at the time of the admission of evidence
regarding extraneous offenses, whereupon the following ensued:

 MR. RODGERS: I think we are entitled to a charge at this point in trial that
the -- the same limiting instructions you get in the jury charge.

 

 THE COURT: Tell me what it is.

 

 MR. RODGERS: They are not to consider it for proof that the defendant
committed this particular act but it's being offered for other reasons.

 

 MR. WHELCHEL [for the State]: Judge, that's not necessarily true.

 

 THE COURT: I'm going to tell you frankly I think it is offered for the proof
that he committed this act. Child molesters are child molesters, it's been my
experience. If the judges in the appellate courts have been around very long, they
understand that too.


 A defendant is entitled to an instruction limiting the jury's use of an extraneous offense not
only in the jury charge but also at the time the evidence is admitted, if such an instruction is timely
requested by the accused. Rankin v. State, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996). The
failure to give such an instruction at the time the evidence is admitted is error when such an
instruction has been requested. Id. Taking into account the statements of the trial judge in the
exchange recited above, an instruction of the nature requested by Pedersen, if given, would have
expressly contradicted the reasons just given by the judge for having allowed the evidence. 

 The State theorizes that no limiting instruction was required in this case "because the
evidence [of the extraneous offense] was admitted to rebut appellant's unlimited defensive theory
and was contextual evidence in light of appellant's defensive strategy." Yet, the State has failed to
direct our attention to anything in the record that shows the extraneous offense occurred
simultaneously with the molestation of L.P. Such proof would be required to except the now-at-issue extraneous offense evidence from a limiting instruction under the "same transaction contextual
offense" exception of the Rankin requirement. See, e.g., Castaldo v. State, 78 S.W.3d 345, 352 (Tex.
Crim. App. 2002); Wesbrook v. State, 29 S.W.3d 103, 114-15 (Tex. Crim. App. 2000); King v. State,
189 S.W.3d 347, 356-57 (Tex. App.--Fort Worth 2006, no pet.). 

 The State's argument on this issue is more appropriate to the consideration of whether such
evidence is admissible over a Rule 404(b) objection; the State's argument does nothing to address
the proper scope of consideration a jury may have of such evidence. This is a critical distinction
because sometimes evidence, although admissible under our Rules of Evidence for certain reasons,
can have meanings beyond those proper purposes. When such a situation arises, the trial court
may--and should--immediately define and limit the jury's ability to consider such evidence to only
those areas which are permitted under our Rules of Evidence. Tex. R. Evid. 105; Rankin, 974
S.W.2d at 711-13; see also Delgado v. State, No. PD-0203-07, 2007 Tex. Crim. App. LEXIS 1235,
at *14 (Tex. Crim. App. Sept. 26, 2007) (noting that federal courts will require sua sponte limiting
instructions when evidence in question is so obviously admissible only for limited purpose and to
fail to so instruct will clearly threaten serious prejudice to the accused).

 We conclude the lower court in this case erred when it denied Pedersen's request for the
limiting instruction. Cf. Rankin, 974 S.W.2d at 713. The more difficult question, however, is
whether the error resulted in sufficient harm to warrant reversal. Id.; Mendiola v. State, 995 S.W.2d
175, 183 (Tex. App.--San Antonio 1999), rev'd on other grounds, 21 S.W.3d 282 (Tex. Crim. App.
2000). 

 Except for constitutional errors, an appellate court may not reverse a criminal case unless that
error affects the accused's substantial rights. Tex. R. App. P. 44.2. A substantial right is a right that
is "affected when the error had a substantial and injurious effect or influence in determining the jury's
verdict." King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An appellate court should
ultimately affirm the conviction, despite such an error, "if the appellate court, after examining the
record as a whole, has a fair assurance that the error did not influence the jury, or had but slight
effect." Rankin v. State, 995 S.W.2d 210, 215 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd)
(citing Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

 There were only two witnesses who testified about the merits of the crime for which Pedersen
was then on trial: L.P. (the victim) and Dearinger (the outcry witness). (2) The remaining witnesses
who testified during the guilt/innocence phase were there to testify as either character or extraneous
offense witnesses. (3)

 The extraneous offense evidence concerning M.L. was admitted during the testimony of the
State's first trial witness. Until this point, the jury had heard less testimony than fit into twenty pages
of the record. After the trial court overruled Pedersen's objection to admission of any testimony
concerning the M.L. offense, the jury heard Susan Dearinger testify that Pedersen had admitted in
a court of law to having committed those extraneous sex crimes and to having been placed on
community supervision for those crimes. Dearinger also told the jury that as a result of Pedersen's
plea in the other case, he would have to register as a sex offender for the rest of his life. 
Additionally, Dearinger made a few attempts to suggestively compare L.P.'s current outcry of abuse
to that made by Pedersen's acknowledged victim in the extraneous case. 

 After L.P. concluded her testimony, the jury heard from six additional witnesses, whose
testimonies comprised about ninety additional pages of the reporter's record. From the time it heard
Susan Dearinger describe the M.L. molestation outcry until the trial court issued its written charge
(six witnesses later), the jury had unfettered discretion or direction as to how it should consider the
extraneous offense evidence and how all the other witnesses' testimonies should be evaluated in light
of the extraneous offense evidence. Moreover, one of those additional witnesses was M.L. herself;
she testified about being fondled by Pedersen on her breast and vaginal areas. 

 By our estimation, nearly thirty-five percent of the pages in the entire reporter's record of
testimony during guilt/innocence touched upon the extraneous offense evidence rather than merely
the crime for which Pedersen was then on trial. (4) The jury's unlimited ability to consider the
extraneous offense evidence clearly permeated this trial. A casual observer might go so far as to say
this trial was as much about the extraneous offense as it was the charged offenses.

 The Texas Court of Criminal Appeals has noted: 

 An instruction given for the first time during the jury charge necessarily leaves a
window of time in which the jury can contemplate the evidence in an inappropriate
manner. For example, as in this case, if the State offered evidence to show that a
defendant accused of child molestation had previously molested two other young
girls, then that evidence may properly be considered to show intent to molest the
complainant. However, jurors may also improperly use that evidence to form a
negative opinion of the defendant prior to receiving limiting instructions from the
judge. Jurors cannot be expected to know exactly how to use the evidence unless we
tell them, nor can we guarantee that they will "remain open-minded until the
presentation of all the evidence and instructions . . ." See Morrison v. State, 845
S.W.2d 882, 887 (Tex. Crim. App. 1992). Additionally, we cannot tell how jurors
have used the admitted evidence. Thus, the possibility exists that, unless we instruct
the jury on evidence concurrently with its admittance, jurors may, unbeknownst to
us, use that evidence improperly by forming an indelible perception of the defendant
that will work unfairly to his inevitable detriment.


Rankin, 974 S.W.2d at 712.

 Based on our review of the entire record of the guilt/innocence phase of trial, when taking
into account the fact that this extraneous offense evidence was admitted at the very earliest stages
of the trial on guilt/innocence, when considering the substantial portion of the record devoted to
questioning the witnesses about this extraneous offense, and when factoring in the length of time the
jury had unfettered discretion to compare this extraneous offense evidence to L.P.'s accusations of
molestation before receiving the trial court's written jury charge, we cannot say with fair assurance
that the trial court's error did not influence the jury's verdict or had but slight effect in this trial. We
must, therefore, conclude the trial court's error injured Pedersen's substantial rights. 

 The Texas Rules of Appellate Procedure mandate that we reverse the trial court's judgment
of conviction and remand this case for a new trial. Cf. Roberts v. State, 29 S.W.3d 596, 601-02
(Tex. App.--Houston [1st Dist.] 2000, pet. ref'd) (extraneous offense evidence had "substantial and
injurious influence" on jury's verdict); and contrast Salazar v. State, 222 S.W.3d 10, 17 (Tex.
App.--Amarillo 2006, pet. ref'd) (only ten percent of trial devoted to extraneous offense evidence,
which all came during State's final three witnesses); Jones v. State, 119 S.W.3d 412, 424-25 (Tex.
App.--Fort Worth 2003, no pet.) (extraneous offense evidence admitted near end of trial, short time
interval between admission of extraneous offense testimony and promulgation of trial court's written
charge that included limiting instruction).

III. Pedersen's Remaining Points of Error

 Pedersen raises several additional points of error. Assuming, without so deciding, that he
could prevail upon any of these other issues, none would entitle him to greater relief than can be
accorded in this case given our disposition of his third issue. We, therefore, decline to address
Pedersen's remaining issues.

 We reverse the judgment of the trial court and remand this case to the trial court for a new
trial.


 Bailey C. Moseley

 Justice


Date Submitted: September 26, 2007

Date Decided: October 24, 2007


Publish



1. The trial on the merits occurred October 26 and 27, 2006.
2. See Tex. Code Crim. Proc. Ann. art. 38.072, § 2 (Vernon 2005) (permitting only first
person to whom child made outcry to testify about allegation of molestation).
3. Pedersen argued that neither M.L.'s testimony nor Paul Dearinger's testimony regarding L.P.
was admissible for any purpose. See Tex. R. Evid. 404(b) (extraneous offense evidence
inadmissible to prove accused acted in conformity therewith); Tex. Code Crim. Proc. Ann. art.
38.072 (Vernon 2005) (admission of outcry witness testimony permissible only for offense then
being tried).
4. More specifically, the extraneous offense was discussed in the jury's presence at pages
42-47, 48-50, 68-69, 70, 73-74, 77-80, 82-83, 104, 105-107, 130-141, and 142-147, for a total
of forty-two pages of testimony. The total testimony heard by the jury covered 121 pages of the
record. Thus, approximately 34.71 percent of the pages in the record concerned evidence about the
extraneous offense.